(C. D. 205)

COMEX TRADING CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided August 28, 1939)

*Strauss & Hedges* (*Howard C. Carter* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States; arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations invoiced as lever corkscrews for propaganda. Duty was levied thereon at the rate of 18 cents each and 55 per centum ad valorem, or at 25 cents each and 50 per centum ad valorem, according to the value of the merchandise, under the provision in paragraph 354 of the Tariff Act of 1930 for "knives by whatever name known · * * * which have folding or other than fixed blades or attachments." It is claimed that said articles are properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of said act as manufactures of metal not specially provided for, or at 40 per centum ad valorem under paragraph 339 of said act as household utensils of the kind therein made dutiable at that rate.

A sample of the merchandise at bar was admitted in evidence as Exhibit 1. It consists of a knife handle with a folding knife blade, a folding corkscrew, and a folding bottle-cap remover.

In addition to the sample the plaintiff offered in evidence the testimony of Sidney Ungar, manager of the plaintiff corporation, who testified that he saw the merchandise in question at the time of importation. After identifying the same (Exhibit 1), he testified that he had seen the articles in question in use in various hotels and restaurants, the knife blade being used to remove the tinfoil from bottles, and the corkscrew to extract the cork; that the other attachment is used to open bottles that have caps instead of corks; that the corkscrew is used many times more than the knife blade; that the entire article is used in restaurants, hotels, and stores, and occasionally in homes; that his company is engaged in the business of importing wines and liquors, and that they did not sell the articles in question but gave them to bartenders and storekeepers as an advertising medium.

On cross-examination he testified that he distributed a majority of the imported articles to hotels, bars, and restaurants, and that he did not distribute them to householders.

The Government offered in evidence the testimony of William V. Bunting, examiner of merchandise at the port of New York. He

testified that he had appraised the importation in question; that he had been passing merchandise of a similar type during the past 29 years, advisorily classifying them as "knives by whatever name known * * * which have folding or other than fixed blades or attachments"; and that similar language has appeared in the Tariff Acts of 1909, 1913, 1922, and 1930.

On cross-examination he testified as follows:

Cross-examination by Mr. CARTER:

X Q. Mr. Bunting, isn't it a fact Exhibit 1 is something more than a knife?— A. I don't think so, and I speak from training as a maker of pocketknives for many years. It is known generally as a waiter's knife.

X Q. Is Exhibit 1, the type of knife you would carry in your pocket?—A. I think most waiters do carry it in their pocket or strapped to their belt.

Judge KINCHELOE. You mean while they are working, or all the time?

The WITNESS. While they are at work.

Upon this record, counsel for the plaintiff in their brief filed herein contend that the article in question is more than a knife and therefore is not properly classifiable under said paragraph 354, which is the knife paragraph. With this contention we do not agree. In the case of *A. Kastor & Bros.* v. *United States,* T. D. 25335, 7 Treas. Dec. 871, this court had before it certain articles known as camping knives which contained, in addition to a cutting blade, a fork and a spoon, all of which were hinged so as to fold into or alongside of the handle. In holding that said articles were properly dutiable under paragraph 155 of the Tariff Act of 1897 as pocketknives, the court said:

Many pocketknives are made which are provided, in addition to the cutting blades, with a corkscrew, scissors, nail cleaners, nail files, tweezer, punch, saw, and other articles of utility.

In the more recent case of *Wilfred Schade Forwarding Co.* v. *United States,* T. D. 36702, 31 Treas. Dec. 241, arising under the Tariff Act of 1913, similar camping knives were held properly dutiable under the provision in paragraph 128 of said act for "all knives by whatever name known, including such as are denominatively mentioned in this section, which have folding or other than fixed blades or attachments."

It will be observed that the language of paragraph 128 is identical with the language appearing in paragraph 354 of the Tariff Act of 1930. It is also interesting to note that the importer there, as in this case, claimed that the merchandise which was classified by the collector under the corresponding knife paragraph of the act of 1913 was properly dutiable under the provision in said paragraph for manufactures of metal not specially provided for.

Under these decisions, which so far as we know have never been reversed, and the long-continued practice of the customs officials, we hold unsound the claim alleged under said paragraph 397 as manufactures of metal not specially provided for.

In regard to the other claim of the plaintiff, that the merchandise is properly dutiable at the rate of 40 per centum ad valorem as household utensils, the testimony of the plaintiff's own witness is that the articles in question are not chiefly used in the home. They are therefore not within the scope of paragraph 339 covering household utensils.

Upon the entire record we hold as a matter of law that the articles constituting the imported merchandise have been properly classified by the collector under said paragraph 354 of the Tariff Act of 1930, and that classification is hereby affirmed. All claims of the plaintiff are therefore overruled, and judgment will be rendered accordingly.