(C. D. 1122)

CLUTSOM MACHINES, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 29, 1948)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh* and *Arthur R. Martoccia*, special attorneys), for the defendant.

Before LAWRENCE and TILSON, Judges

LAWRENCE, Judge: This case presents the question whether a machine which was designed exclusively to weave and knit in a single operation was properly classified by the collector of customs under the provision in paragraph 372 of the Tariff Act of 1930 for—

\* \* \* all other textile machinery, finished or unfinished, not specially provided for, \* \* \*.

and therefore subject to duty at the rate of 40 per centum ad valorem.

The importation in controversy is from Great Britain and is referred to in the invoice accompanying the entry papers as consisting of 19 cases containing 4 complete machines and parts.

Plaintiff, by its protest, objects to the assessment of 40 per centum ad valorem on the "Machinery, Textile Machinery, Weaving Machinery" covered by the entry involved and claims that duty should have been assessed—

\* \* \* at 20% under said paragraph 372 and the British trade Agreement, T. D. 49753 as textile machinery finished or unfinished not specially provided for, or in the alternative at 25% under said paragraph and said British Trade Agreement as textile machinery not specially provided for, or in the alternative at 27½% under said paragraph as all other machines, finished or unfinished not specially provided for.

The pertinent provisions of paragraph 372 of the Tariff Act of 1930, as modified by the trade agreement between the United States and the United Kingdom, effective January 1, 1939 (74 Treas. Dec. 253, T. D. 49753), cited in the protest, *supra*, read as follows:

> Textile machinery, finished or unfinished, not specially provided for, for textile manufacturing or processing prior to the making of fabrics or woven, knit, crocheted, or felt articles not made from fabrics (except worsted combs, bleaching, printing, dyeing, or finishing machinery, and machinery for making synthetic textile filaments, bands, strips, or sheets), 20% ad val.

> Textile machinery, finished or unfinished, not specially provided for, and not provided for heretofore in any item numbered 372 in this schedule (except \* \* \* looms \* \* \*), 25% ad val.

Said paragraph 372, as originally enacted, also invoked by plaintiff, provides a rate of duty of 27½ per centum ad valorem for—

> \* \* \* all other machines, finished or unfinished, not specially provided for, \* \* \*.

Plaintiff in its brief concedes that the articles in question perform "no textile manufacturing or processing prior to the making of fabrics. \* \* \* Accordingly, the claim for duty at 20 per centum under paragraph 372 as modified by the aforesaid trade agreement is not pressed."

Moreover, since the testimony discloses and plaintiff in its brief admits that the machines are "textile machines," and as the tariff act contains an *eo nomine* provision for such machinery, the claim of plaintiff for classification of the articles under the provision in paragraph 372 of said act, as originally enacted, for "\* \* \* all other machines, finished or unfinished, not specially provided for \* \* \*," is untenable.

Therefore, the issue presented by this protest is a clear-cut one, namely, are the imported machines *looms*. The solution of that question will determine whether the articles here before us come within the provision in said paragraph 372, as modified by the trade agreement between the United States and the United Kingdom, *supra*, for—

> Textile machinery, finished or unfinished, not specially provided for, \* \* \* (*except* \* \* \* *looms* \* \* \* ). [Italics supplied.]

If they do, then they become subject to duty at the rate of 25 per centum ad valorem under the provision last above quoted, as alternatively claimed by plaintiff. Unless this claim can be sustained, the classification of the collector of customs must be affirmed.

In the record before us, no question of commercial designation is presented. Therefore, the word "loom" must be given its ordinary meaning. For definitions of that word, resort is had to the following lexicographic authorities:

Webster's New International Dictionary, Second Edition, (1939)—

loom, *n.* 3. A frame or machine for interweaving yarn or threads into a fabric, the operation being performed by laying lengthwise a series called the *warp* and weaving in across this other threads called the *weft, woof,* or *filling.* The warp threads are wound on a warp beam and passed through heddles and reed, the weft is shot across them in shuttles and settled in place by the reed and batten, and the finished fabric is wound on a cloth beam.

Funk & Wagnalls New Standard Dictionary of the English Language (1942)—

loom, *n.* 1. A machine in which yarn or thread is woven into a fabric, by the crossing of threads called chain or warp, running lengthwise, with others called weft, woof, or filling.

Audels Mechanical Dictionary (1942)—

loom.—1. A machine in which yarn or thread is woven into a fabric by the crossing of threads, called chain or warp running lengthwise, with others called weft, woof or filling.

Knight's American Mechanical Dictionary, Vol. II—

Loom. A machine in which yarn or thread is woven into fabric.

A woven fabric consists of yarns called the warp laid in one direction, and crossed by yarns laid transversely and known as the *woof.* The warp is also called the *chain.* The words *woof, weft, filling,* are synonyms.

The New Century Dictionary, Volume One (1946)—

loom, *n.* * * * a machine or apparatus for weaving yarn or thread into a fabric; hence, the art or the process of weaving * * * .

Encyclopaedia Britannica, Volume 14 (1947)—

LOOM. A machine for weaving fabrics by intersecting the longitudinal threads, the "warp," *i. e.,* "that which is thrown across," with the transverse threads, the "weft," *i. e.,* "that which is woven."

The gist of the definitions above set forth is that a loom is a machine for weaving yarn or thread into a fabric.

At the hearing of the case, one witness was called to testify on behalf of the plaintiff, and one for the defendant. In addition, various exhibits were admitted in evidence. Plaintiff's exhibits 1 and 2 are photographs representing the machines in issue, exhibit 1 portraying the front of one of the machines, and exhibit 2, being a rear view. Plaintiff's exhibit 3 depicts a battery of such machines installed in a factory. Defendant's exhibit 4 is a copy of Letters Patent, Number 2,130,636, granted September 20, 1938, to Charles Clutsom, inventor of a knitting unit which is incorporated into each of the imported machines. Defendant's illustrative exhibit A is a photostatic copy

of an advertisement of machines like those in issue which appeared in the Textile World of August 1942.

The president of the plaintiff corporation testified that he is thoroughly familiar with the machines in issue and, in fact, played a "very minor part" in their invention. Asked to describe to the court how the machines operate, he stated:

It does a combination of weaving and knitting and it works and operates without a shuttle. It will produce about 75 percent faster than the old type of machinery that this is intended to replace. The operation is very simple. In replacing the shuttle, there is a thread arm on the right hand side of the device that we call, for lack of a better word, a unit. That carries a thread through the shed of the material and that thread is caught on the left hand side of the unit by a knitting needle which makes a knitted edge and thus locks each shoot into position.

The witness further testified in substance that the "unit" described in the Letters Patent, exhibit 4, was originally intended to be permanently attached or affixed to existing looms from which it could not be removed without making those machines useless. He stated that after 2½ months' use, such machines proved impractical and it became necessary to redesign the mechanism; that the imported machines have the units permanently built in, would not operate without them, and the units could not be removed without destroying the machines.

He testified also that the machines do a combination of weaving and knitting; that they operate without a shuttle and manufacture a fabric 1⅝ inches wide. Describing the operation of a loom, he stated that on a loom the weft threads are worked across and into the warp by the use of a shuttle crossing and recrossing the web, the edge being bound in the process of weaving by the action of the shuttle in the shed passing through twice; that in the imported machines instead of a shuttle, there is a "thread arm" or "unit" by means of which, after coming down and across the machine, the warp threads pass through a hole in a finger, the finger being geared to the machine so that it carries the weft thread through and to the other side of the shed where it synchronizes with a needle; that this needle picks up the weft thread and knits one edge of the fabric.

The witness stated that the imported machines produce a fabric partly woven and partly knitted, 90 per centum of the fabric being woven, and 10 per centum knitted, whereas a loom produces a fabric entirely woven. When asked by the court whether "You produce an entirely new article by this machine?," the witness replied in the affirmative. He testified further that the machines differ from looms not only in design, structure, and appearance, but they operate on an entirely different mechanical principle from looms; that they perform a function looms do not perform, produce an entirely new and different article from looms, and that the machines could not be converted

into looms by the removal of the knitting mechanisms and the addition of shuttles.

With reference to illustrative exhibit A, a photostatic copy of an advertisement of machines similar to those in issue, which appeared in the Textile World of August 1942, wherein the statement is made—

The Clutsom highspeed shuttleless loom gives high production in a wide range of narrow textile fabrics.

the witness testified that the word "loom" was used to get his message across, there being no technical name in the weaving industry for this new machine, and added that the machines are known as "Clutsom machines" and not as a weaving machine or as a shuttleless loom and that prospective buyers purchase them after personal canvass and after seeing a demonstration of the machines for themselves.

Defendant offered the testimony of the assistant general manager of the J. W. Wood Elastic Web Co., manufacturers of elastic webbing, and both narrow and wide fabrics. He stated that he has been instrumental in developing a great deal of textile equipment for the company which employs him, including a narrow fabric shuttleless loom, known as the "Libby Shuttleless Loom" which has been in operation since 1939. He testified further that the Libby machine is quite different in structure from the Clutsom machine; that the Clutsom machine is similar to a multiple shuttle loom, a gang loom, in which it weaves anywhere from 10 to 30 or 40 pieces at a time, whereas the Libby machine is an individual unit, and has a revolving reed in place of the conventional type of reciprocating reed, and employs two fingers which ordinarily enter the shell, a needle on each side, but that both machines make "the same type of fabric."

The witness stated that the Clutsom machines produce elastic fabrics, zipper tapes, ribbons, and a variety of fabrics, with a knitted selvage on one side and with the other side bound in by the very process of weaving.

When asked to describe a loom, he stated that "A loom, in my opinion, is a machine which will make a woven fabric in which parallel warp threads or fibers are interlaced with other fibers running at right angles called a filler," and added that in his opinion the Clutsom machines fall within such a definition. The witness, in answer to a question by the court, further testified—

JUDGE LAWRENCE: Looms may be with or without shuttles and still be looms; is that right?

THE WITNESS: That's right.

He admitted, however, that the Clutsom machines produce a fabric partly woven and partly knitted and that there is a difference between a woven fabric with a knitted edge and a woven fabric which does not have a knitted edge; that ordinarily looms do not use needles but that

on the Clutsom machines there is a knitting mechanism and knitting needle, the function of which is to make the knitted selvage which binds in the edge thread, whereas on a loom, both edges of the fabric are bound in the weaving process.

Counsel for both plaintiff and defendant in their briefs make reference to the cases of *Durbrow & Hearne Manufacturing Co.* v. *United States*, 9 Ct. Cust. Appls. 148, T. D. 37993; *Durbrow & Hearne et al.* v. *United States*, 11 Ct. Cust. Appls. 446, T. D. 39440; and *United States* v. *Mills & Duflot*, 5 Ct. Cust. Appls. 534, T. D. 35178.

The *Durbrow & Hearne* cases, *supra*, involved sewing machines which by the addition or removal of attachments were used for embroidery work. Our appellate court held that the machines retained their identity as sewing machines despite their utility in performing embroidery work, stating in the earlier case and reaffirming in the latter that—

A machine that is primarily constructed and designed for sewing fabrics is still a sewing machine although used for the purpose of embroidery work, and, on the other hand, a machine primarily constructed and designed to do embroidering remains such, even assuming, although we do not understand that it is so, that it might be used for ordinary machine sewing. The question is not so much what it does as what it primarily was constructed and designed to do.

Applying the principle of the *Durbrow & Hearne* cases, *supra*, to the issue here presented, the evidence is clear that the Clutsom machines were primarily constructed and designed to knit as well as weave in the production of a single fabric, whereas a loom as commonly understood performs the single function of weaving, and that it would be impossible to use the Clutsom machine for the sole operation of weaving, or of knitting, by the addition or removal of any attachments.

In the *Mills & Duflot* case, *supra*, the question presented was whether certain hair nets were made on a Lever or Gothrough machine. In that case it was shown that the Lever or Gothrough machines were equipped with a jacquard attachment which had, through the evolution of weaving machinery, become an accepted improvement of said machines, whereas the hair nets there in issue had been produced on a machine employing a cut wheel instead of a jacquard attachment. Our appellate court there stated:

\* \* \* We think that the evidence and the history of weaving machinery cited by the Government fairly well establish that the successful application of the Jacquard attachment to the Lever loom was an improvement of that loom and that thereafter the machines ordinarily known as the Lever and Gothrough were those which were equipped with that attachment and which were especially fitted for the weaving of figured goods and other fancy articles. \* \* \*

and added:

It is true that the Lever or Gothrough may be *transformed* by eliminating the Jacquard attachment and fitting it with a cut wheel, but in such case it appears from the testimony of the Government's own witnesses that the change is so pro-

nounced that the transformed machine no longer operates on the principle of the Lever or Gothrough, and that it is difficult ever again to use the loom for the making of laces. It may be that a transformed Lever or Gothrough is known as a *plain* Lever or Gothrough, but that fact can have no pertinency here, inasmuch as the testimony is clear and explicit that the nets in question were not manufactured on a transformed Lever or Gothrough but on plain net machines having their own special names and distinguished from the Lever or Gothrough by differences of form and mechanical movement. * * *

Accordingly the ruling of the trial court that the hair nets there in issue were not made on a Lever or Gothrough machine was affirmed.

In the case before us, the Clutsom machine is distinguished from a loom in that it has incorporated therein as an integral and inseparable feature a knitting unit.

The cases of *United States* v. *Julius Kayser & Co.*, 33 C. C. P. A. (Customs) 179, C. A. D. 333 (on gloves knit on other than a warp-knitting machine), and *J. W. Hampton, Jr., & Co.* v. *United States*, 24 Treas. Dec. 218, T. D. 33191 (on ticket-printing and recording mechanism), are also referred to in the brief of counsel for the defendant. Although defendant seeks to distinguish these cases, we are of the opinion that they tend to support the main contention of plaintiff.

In the *Hampton* case, *supra*, it was stated that a machine which prints tickets and at the same time also records the amount received, then registers the sale, and by means of an adding mechanism records the total amount sold through the medium, is something more than or other than a printing press.

Likewise may it be said of the Clutsom machine here in issue, that since in addition to performing the usual function of a loom, namely, to weave a fabric, the machine at the same time knits a selvage thereon, it is something more than or other than a loom.

The case of *United States* v. *Julius Kayser & Co.*, *supra*, affirmed the judgment of this court in *Julius Kayser & Co.* v. *United States*, 14 Cust. Ct. 126, C. D. 925, wherein it was stated, *inter alia*, that the terms "more than," "other than," "different from," and "except" are practically synonymous.

The real question in the *Kayser* case, *supra*, was whether the Simplex machine which produced the fabric from which certain gloves were made was a "warp-knitting machine" or "other than a warp-knitting machine." It was therein held that the glove fabric was made on other than a warp-knitting machine. In arriving at its decision, the trial court in that case stated—

According to the testimony herein the Simplex knitting machine was designed and constructed to make a glove fabric to overcome certain defects and shortcomings with the glove fabric known as "Duplex" cloth. Duplex cloth was made, and is still made, by pasting together either two pieces of Tricot fabric, known as "Atlas" cloth, or a piece of Atlas cloth and a piece of another cloth

* * *. Atlas cloth is shown to be a well-known and widely used warp-knit glove fabric, consisting of one layer of fabric with a face and a back, or a "right" and a "wrong" side. Being too thin or too light for gloves for cold weather use, it probably was the reason for the making of Duplex cloth by combining, as before stated, either two pieces of Atlas cloth, or of Atlas cloth and another cloth. But even this evidently was not entirely satisfactory, because the pasted cloth became stiff after washing and the pasted pieces of fabric showed a tendency to separate. These defects appear to be overcome in the Simplex fabric, as the two constituent layers of loops or fabric therein are joined together by interknitting.

After a consideration of what constituted a warp-knitting machine, the trial court said—

In the present case we are satisfied that the testimony shows that the Simplex knitting machine on which the fabric of which the imported gloves were made is different from, or more than, the ordinary warp-knitting machine, such as the Tricot and other machines, in that, while it warp knits two layers of fabric or planes of loops, it also interknits the two layers together by the use of sinker loops working back and forth through the fabric in depth and at right angles to the fabric, as distinguished from the lengthwise direction the knitting takes in warp knitting.

By analogy to the *Kayser* case, *supra*, wherein the operation of interknitting the two layers of warp-knitted fabric was held to remove the machine which produced the fabric from the status of a "warp-knitting machine," so, too, in the case before us, the operation of knitting a selvage concurrently with the weaving of the fabric produced by the Clutsom machines removes said machines from the category of "looms."

The defendant contends that inasmuch as the weaving of the fabric on the Clutsom machine constituted 90 per centum of the operation as opposed to 10 per centum which comprised the knitted portion, it naturally follows that the machine is a loom. We cannot subscribe to the proposition that the classification of these machines depends upon the percentages of the type of work performed. Otherwise where should the line be drawn? The decision must rest upon a firmer foundation which we believe should be determined largely by a consideration of the design, character, and purpose of the invention.

Our attention has also been directed to the fact that an advertisement in the Textile World of August 1942 (defendant's illustrative exhibit A) refers to the Clutsom machines as "shuttleless looms." As heretofore pointed out, the record before us discloses that the term "shuttleless looms" in describing the imported articles was used for lack of a technical name in the weaving industry for these new machines, and that said machines which knit as well as weave are ordinarily referred to as "Clutsom machines" rather than as weaving machines or as shuttleless looms.

Based upon the testimony and record in this case, we find—

1. That the machines the subject of this importation, known as "Clutsom machines," are textile machines.

2. That they perform the dual functions of weaving and knitting in a single operation in producing a narrow woven fabric with a knitted selvage.

3. That said machines were primarily constructed and designed to perform their dual functions.

4. That they can not be converted to perform the single function of weaving, or of knitting, by the addition or removal of any attachments.

We therefore hold as a matter of law that the Clutsom machine in controversy does not come within the common meaning of the word "loom" as defined by the authorities to which reference has been made herein.

The claim of the plaintiff is sustained alleging that the machines covered by the invoice and entry accompanying this protest are properly dutiable at the rate of 25 per centum ad valorem under the provision for "Textile machinery, finished or unfinished, not specially provided for, * * * (except * * * looms * * *)" in paragraph 372 of the Tariff Act of 1930, as modified by the trade agreement between the United States and the United Kingdom, effective January 1, 1939 (74 Treas. Dec. 253, T. D. 49753).

While it is observed that the importation in question is referred to in the invoice as consisting of four complete machines "and parts," since no reference has been made to said parts either in the original protest or by amendment thereto at any stage of the proceedings, it is considered that the matter of their classification is not before us.

Judgment will be entered in accordance with the views above expressed.