(C.D. 4288)

TRANS-ATLANTIC COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

---

(Decided October 28, 1971)

*Allerton deC. Tompkins* for the plaintiff.
*L. Patrick Gray, III,* Assistant Attorney General (*Robert Blanc* and *Joseph I. Liebman,* trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges, and ROSENSTEIN, Senior Judge; RICHARDSON, J., dissenting

ROSENSTEIN, Judge: The merchandise involved herein, invoiced as "Wrought Steel Single Action Template Spring Hinges", was assessed with duty at 17 per centum ad valorem under TSUS item 647.03, as amended by the Tariff Schedules Technical Amendments Act of 1965, Pub. L. 82–241, 79 Stat. 933, which provides in pertinent part:

Hinges; and fittings and mountings not specially provided for, suitable for furniture, doors, windows, blinds, staircases, luggage, vehicle coach work, caskets, cabinets, and similar uses; all the foregoing, of base metal, whether or not coated or plated with precious metal:
Not coated or plated with precious metal:
Of iron or steel, or aluminum, or of zinc:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 647.03 | Other _____ | 17% ad val. |

Plaintiff claims that the articles are properly dutiable at 10 per centum ad valorem under TSUS item 646.95, as modified by the Geneva (1967) Protocol to the General Agreement on Tariffs and Trade, T.D. 68–9, which provides:

| | | |
|---|---|---|
| 646.95 | Door closers, and parts thereof, of base metal _____ | 10% ad val. |

Exhibit 1, a sample of the imported merchandise, consists of a boxed pair of single action spring hinges, a pintle (short steel bar) for setting or adjusting tension, and screws.

The record in *Trans-Atlantic Company* v. *United States,* protest 67/68753, involving double action spring hinges and the same issues of fact and law, which was dismissed after the submission had been vacated, was incorporated herein. The same witness appeared for plaintiff in both proceedings. Defendant called two witnesses in the current matter, one of whom had testified with another witness in the incorporated case.

The record establishes that the function of the hinge is to hang, or hold, the door in place, and that of the spring, which is located in the barrel of the hinge, is to close the door automatically. (The spring compresses when the door is opened and expands when the door is re-

leased.) If the spring were removed, the hinge would continue to function, but the door would have to be closed manually, or, alternatively, a hydraulic door closer installed if automatic closure were desired. The spring hinges provide a means of "cheaply hanging and providing door closing facilities to a door * * *" (R. 85).

Plaintiff concedes that the spring hinges are a kind of hinge, but claims that they are also door closers and, whether the latter be considered a primary or secondary feature, are more specifically provided for as such under item 646.95.

Defendant contends that the spring is merely an auxiliary feature which does not take the subject articles beyond the ambit of the provision for hinges.

Resolution of the issue requires a determination of the meaning of the *eo nomine* provision for "hinges" as this term is used in item 647.03 of the tariff schedules.

In the absence of commercial designation, which is not here involved, words used in the tariff statute are to be construed in accordance with their common meaning. *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676 (1958). Common meaning is a matter of law to be determined by the court which may rely upon its own understanding of the terms used and consult the works of standard lexicographers and scientific authorities, in addition to reviewing testimony, which is advisory only, of witnesses. *United States* v. *O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388 (1948) ; *United States* v. *John B. Stetson Co.*, 21 CCPA 3, T.D. 46319 (1933).

The articles at bar comport with the dictionary definitions of "hinge", as follows:

> *Audels Mechanical Dictionary*, 1942:
> The hook or joint on which a door, gate or lid, etc., turns.

> *Funk & Wagnalls New Standard Dictionary of the English Language*, 1942:
> 1. A device for so connecting two pieces, as a box and its lid, that one may be turned upon the other: usually made of metal, and in many forms. (Includes illustration (No. 6) of a spring hinge.)

> *Webster's New International Dictionary*, Second Edition, 1957:
> 1. The hook with its eye, or the joint, or flexible piece, on which a door, gate, lid, etc., turns or swings.

> *Knight's American Mechanical Dictionary*, 1872, volume 2, pages 1103–1104:
> A means of connecting a door, casement, or leaf, with its frame or an object, so that it will swing thereon.

\*　　\*　　\*　　\*　　\*　　\*　　\*

> Hinges are known by purposes, as,— * * *
> Or by some structural peculiarity or shape, as,— * * *
>     Spring-hinge * * *

The rule governing designations of an *eo nomine* character is set forth in *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, 470, T.D. 47464 (1935) :

> The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article.

We find, on the record herein, and after viewing the sample of the imported merchandise, which is itself a potent witness, that the articles at bar are hinges within the ordinary understanding of that term, and that the spring is an added feature which improves their capability but does not change their basic characteristics or identity as a species of hinge within the ambit of item 647.03.

Improvement in the design of an article having an *eo nomine* classification which enables it to perform an additional function does not militate against its continuing to be a form of the named article. Under the tariff acts, articles are classifiable on the basis of their primary design, construction and function, even though they are capable of performing other auxiliary or incidental operations. *Schick X-Ray Co., Inc.* v. *United States*, 64 Cust. Ct. 430, C.D. 4013 (1970) ; *Giddings & Lewis Machine Tool Co. et al.* v. *United States*, 61 Cust. Ct. 284, C.D. 3612, 292 F. Supp. 394 (1968).

In this case we are guided by *United Carr Fastener Corporation* v. *United States* (*Northern Screw Corp., Party in Interest*), 54 CCPA 89, C.A.D. 913 (1967), involving "Tee Nuts", which were claimed to be something more than a "nut" and, therefore, outside the scope of the *eo nomine* provision for nuts in paragraph 330, Tariff Act of 1930. The court of appeals affirmed the trial court's holding that the subject article was a species of nut and quoted from its opinion, as follows (*Id.* v. *Id.*, 56 Cust. Ct. 347, 352–353, C.D. 2648 (1966)) :

> In the instant case, the testimony indicates that the "Tee Nut" came into vogue as a labor and timesaving device in joining objects together, replacing an older, obsolete method of doing the same thing. What appeared to be uppermost in the minds of users of nuts and bolts, according to evidence of record, was the development of a faster, more efficient method of joining components together by means of nuts and bolts, the solution to which problem was apparently found in the evolution of the "Tee Nut." In other words, users of the article were not concerned with the design and creation of a new article of commerce, unrelated to problems and obstacles of past experiences. Hence, shape characteristics of the evolved "Tee Nut" are expressly by design

related to such experiences in industries using nuts and bolts as a means of joining component parts together. Single-mindedness of purpose as a holding device was preserved through evolution of the "Tee Nut" as a replacement article. The fact that a function, previously performed by a washer which at best is but auxiliary when associated in use with a nut, was eliminated in this evolutionary process, contributed to the improvement of, rather than a change in identity of the article as a nut, in our opinion. And the further fact that the evolved "Tee Nut" took on the added character of immobility does not, in our opinion, militate against the article continuing to be a species of nut. According to some of the above noted definitions, shape (square or hexagonal) of a nut is a condition facilitating the manipulation of the article. And this condition of maneuverability was simply improved upon in the evolution of the "Tee Nut."

The appellate court noted that the lower court cited certain cases as controlling and that it applied those cases as follows (at page 353) :

* * * In these cases, the shape characteristics of the imported article suited it to perform functions over and above that performed by the article as to which *eo nomine* tariff classification was sought. The courts found that the articles should be given their claimed *eo nomine* classification notwithstanding the existence of additional features and capabilities in the articles in question. The same approach to classification of the "Tee Nut" in the instant case should be made as was made in the aforementioned cases. For the reasons stated, we hold that the involved "Tee Nut" is a species of nut within the ambit of paragraph 330, and that the collector's classification of the "Tee Nut" as a nut under that paragraph was correct. * * *

Plaintiff's argument that item 646.95 is a "use" provision which in the absence of contrary Congressional intent, must prevail over the *eo nomine* provision for hinges is not pertinent hereto. "The question is not so much what * * * [the imported article] does as what it primarily was constructed and designed to do." *Clutsom Machines, Inc.* v. *United States*, 21 Cust. Ct. 30, 35, C.D. 1122 (1948), citing *Durbrow & Hearne et al.* v. *United States*, 11 Ct. Cust. Appls. 446, 448, T.D. 39440 (1923), and *Durbrow & Hearne Manufacturing Co.* v. *United States*, 9 Ct. Cust. Appls. 148, 152, T.D. 37993 (1919). The spring hinges at bar were primarily designed and constructed to function as hinges. Classification on the basis of its auxiliary function (which can easily be eliminated merely by removing the spring) would be tantamount to letting the tail wag the dog.

For the reasons stated, the protest is overruled.* Judgment will be rendered accordingly.

---

*The entry papers indicate that the appraisement and liquidation herein took place on the same day. The liquidation, which was made prior to the time when the appraisement became final was voidable, but became final in the absence of an appeal for reappraisement. *First American Artificial Flowers, Inc.* v. *United States*, 67 Cust. Ct. 164, C.D. 4268 (1971).

RICHARDSON, Judge: I dissent from the majority opinion as the liquidation was not based on a "final appraisement". Liquidation to be valid, according to the decided cases, should not occur until 60 days after appraisement, when the appraisement becomes final. Here liquidation occurred on the day of appraisement.

This is a 1969 protest, and, according to Title I, Section 122 of The Customs Courts Act of 1970, and Rule 14.9(b)(1) of the Rules of the Customs Court, it is governed by the law in effect prior to October 1, 1970. The liquidation in this protest is premature and void. The law in effect prior to October 1, 1970 as declared by the Court of Customs and Patent Appeals, and by this court in an unbroken chain of decisions, is that a liquidation of an entry prior to the expiration of the 60 days after appraisement in which the collector or district director might appeal for reappraisement is not upon a "final appraised value", is premature and void, and a protest against such liquidation must be dismissed as premature. *United States* v. *Boston Paper Board Co.*, 23 CCPA 372, T.D. 48233 (1936). See also: *Lawrence Groom & Co.* v. *United States*, 64 Treas. Dec. 119, T.D. 46559 (1933), *Biddle Purchasing Co. et al.* v. *United States*, 69 Treas. Dec. 880, T.D. 48320 (1936), *Ti Hang Lung & Co.* v. *United States*, 3 Cust. Ct. 268, C.D. 248 (1939), and *The New Home Sewing Machine Co.* v. *United States*, 62 Cust. Ct. 895, R.D. 11655 (1969). There can be no "final appraised value" until either the right of appeal has been exhausted, or the 60-day statute of limitations has run against such appeal. Only then can there be a legal liquidation.

The liquidation in this case by reason of its prematurity is null and void, and the protest filed herein against such void liquidation is premature, and must, therefore, be dismissed.