HAMPCO APPAREL, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 87–12–01175

(Decided January 28, 1988)

*Rode & Qualey* (*Patrick D. Gill* and *Eleanore Kelly-Kobayashi*) for plaintiff.

*Richard K. Willard,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge; International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Michael T. Ambrosino* and *John J. Mahon*) for defendant.

## OPINION

TSOUCALAS, *Judge:* A trial was held in this matter on January 13 and 14, 1988, for the purpose of determining whether certain garments were properly classified by Customs as shorts under item 381.62, Tariff Schedules of the United States ("TSUS"): "Other men's or boys' wearing apparel, not ornamented: Of cotton: Not knit; * * * Other: * * * Other: * * * Shorts"; or whether they qualify as swimwear and should be classified under item 381.6585, TSUS: "Other men's or boys' wearing apparel, not ornamented: Of cotton: Not knit: * * * Other: * * * Other: * * * Other." As plaintiff requested an immediate decision on the merits, the Court, ruling from the bench, determined that the imported merchandise was in fact swimwear, classifiable under item 381.6585, TSUS. This opinion is issued in accordance with that decision.

## BACKGROUND

On April 15, 1987, plaintiff requested a binding ruling from the U.S. Customs Service, on a garment described as style no. 5640–5, made of 100% cotton twill, which contained a liner of 100% nylon, two side inseam pockets, a lone back button flap pocket, and an elastic waist with a drawstring, either inside or outside. It was anticipated that the country of origin would be China. By Letter Ruling 823218, dated May 7, 1987, the Area Director, New York Seaport, determined that the garment was classifiable under item 381.6585, TSUS, with duty at the rate of 8% *ad valorem,* and within textile quota category 359.

In reliance upon this binding ruling, plaintiff finalized arrangements for the manufacture of this merchandise in the People's Republic of China ("PRC"), and the entry into the United States pursuant to textile category 359. On August 6, 1987, Customs' Headquarters issued Letter Ruling 080500, which revoked the New York ruling and determined that the merchandise in issue was classifiable as shorts under item 381.62, TSUS, with duty at the rate of 16½% *ad valorem,* and that the applicable textile quota designation was category 347.

On October 26, 1987, plaintiff attempted to enter several garments of style no. 5640–5, claiming classification under item 381.6585, TSUS, and tendered a visa for textile category 359. Entry was rejected on October 28, 1987, and plaintiff was advised to enter the merchandise under item 381.62, TSUS, with a visa for textile category 347. However, at that time category 347 was embargoed, and plaintiff could not obtain that visa, therefore, the entry was precluded. Plaintiff filed a protest on October 29, 1987, against the exclusion of the merchandise, which was denied on December 4, 1987.

At trial, plaintiff presented seven witnesses, five of whom were qualified as experts in the field of design, production, manufacture, marketing and retail sale of apparel. Each testified that a swim trunk is constructed with a nylon tricot lining, and an elasticized waist with a drawstring. They also testified that shorts do not have linings. Each of the expert witnesses presented by the plaintiff examined Joint Exhibit No. 1, which is the garment in question, and all testified that, in their opinion, it was a swim trunk or swimsuit. The testimony of William Hanrahan and Lawrence Burstein also revealed that the garment was designed and constructed as swimwear.

Defendant's two expert witnesses concurred with the general definition of swimwear provided by plaintiff's witnesses. However, one of the defendant's experts, Jules Lavner, testified that because the garment was made with a cotton twill outer shell and had pockets, he considered it to be shorts even though it could be used for swimming. While he was of the opinion that the cotton was too heavy to be used as swimwear, he does know of cotton swimwear, and has seen swimwear with side pockets. Defendant's other expert, Emanuel Glazer, who manufactures swimwear, stated that the garment in question (Joint Exhibit No. 1) was a multipurpose short because it could be used for purposes other than swimming. He conceded, however, that swimwear made by his company and almost all swimwear could be used for other purposes.

## DISCUSSION

The testimony of all the expert witnesses, both for plaintiff and defendant, establishes that swimwear is defined as a garment which has an elasticized waistband with a drawstring, and a liner of nylon tricot, designed and used for swimming; whereas shorts usually do not have elasticized waistbands, have no inner lining and have a fly front. In examining the garment sought to be imported (Joint Exhibit No. 1), the court finds the garment to meet these criteria: it was constructed with an elasticized waistband, a drawstring, and an inner lining made of nylon tricot material.

Plaintiff's witness, Peter Martin, an attorney-adviser in the Office of Regulation and Rulings of the U.S. Customs Service, prepared Letter Ruling 080500, of August 6, 1987 revoking the ruling which classified the garment in question as a swimsuit. This revocation, upon which defendant relies, states:

> In determining whether a garment falls within the purview of swimwear and would not, therefore, be classified as shorts, if a question concerning the commercial identity of the garment arises, Customs will look to the following features.
>
> (1) Fabric from which the garment is made. Fabrics such as denims, corduroys, and twills are *usually heavier fabrics than used in normal swimwear*. Such fabrics are bulkier and absorb more water than is *usually desirable for swimwear*.
>
> (2) Side inserted pockets are *usually* a characteristic of shorts and not swimwear. In addition, the extra fabric required adds to the water absorbency of the garment.
>
> (3) *Cotton liners*, again because of increased water absorbency, *are more often found on multipurpose or running shorts*.
>
> (4) A *fly front* is not a normal feature on swimwear.
>
> The weight and absorbency of the fabric of each garment in question is the primary criterion and may be determinative by itself * * *. Each article of apparel should be considered as a whole and, due to the specific nature of swimwear, *if a garment is not readily identifiable as swimwear*, it is a multipurpose garment and should be classified as shorts.
>
>      *      *      *      *      *      *      *
>
> * * * When Customs views this garment as a whole, the weight of the material which forms the outer shell in conjunction with two inserted sideseam pockets and a single rear pocket creates a garment that cannot, through its appearance, be readily identified as swimwear. *This garment can and will be used as swimwear*, but it can and will also be used for alternative activities which are *totally unrelated to swimming*, *e.g.*, boating, basketball and bicycling.

*See* Plaintiff's Exhibit 10 (emphasis added).[1] Upon questioning, Mr. Martin admitted that almost any form of swimwear can be used for the alternative activities described by him in the ruling.

The testimony at trial clearly shows that the garment at issue herein was readily identifiable as swimwear.[2] Further, the merchandise itself is persuasive evidence as to its use as swimwear. *Mast Industries, Inc.* v. *United States*, 9 CIT 549, 552 (1985), *aff'd*, 786 F.2d 1144 (Fed. Cir. 1986). The garment has a nylon tricot inner lining and an elastic waistband with a drawstring, and satisfies the

---

[1]Note, in the Letter Ruling of May 7, 1987 Customs specifically stated that a garment that has "short legs with side vents, an elasticized waistband through which a drawstring is threaded, a knitted liner which appears to be of man-made fibers, at each side an open pocket, and on one side of the upper back a pocket with a buttoned flap" is classifiable as swim trunks under item 381.6585, TSUS.

[2]*See* Testimony of Leslie Susan Stark, William Hanrahan, Lawrence H. Burstein and Linda Stebelman; Defendant's Exhibits 1, 2, 4–8, and 13–17.

criteria set forth in Customs' ruling of August 6, 1987. The testimony of the expert witnesses establishes that the fabric from which the garment is made is a design and fashion factor and there was testimony adduced at trial that cotton twill is the "in fabric" for swimwear today. *See, e.g.*, Testimony of Leslie Susan Stark.

One reference source used by Customs is The Textile Category Guidelines for Fabric and Garments Reported Under Various Categories, C.I.E. June 1987. *See* Defendant's Exhibit I. These guidelines recognize swim trunks as a particular type of garment, one distinct from shorts:

> Garments commercially known as jogging or athletic shorts are normally loose-fitting short pants usually extending from the waist to the upper thigh and usually have an elastic waistband. They may resemble swim trunks for men, boys, or male infants, which are not included in this category. Such garments (swim trunks) will usually have an elasticized waist with a drawstring and a full lightweight support liner * * *. While a fly front will not preclude a garment from being swimwear, normally a garment with a fly front and two or more pockets is shorts and not swimwear. Garments which cannot be recognized as swim trunks will be considered shorts.

*Id.* at 42.

Therefore, in determining whether a garment falls within the purview of swimwear and not shorts, we have to look to the following features:

> (1) whether the garment has a elasticized waistband through which a drawstring is threaded;
> (2) whether the garment has an inner lining of lightweight material, namely, nylon tricot; and
> (3) whether the garment was designed and constructed for swimming.

If all of the above are present, the garment is swimwear. If the garment does not have an inner lining and has a fly front, it would be considered shorts. This garment does possess the features described by Customs as being indicative of swim trunks.

As the merchandise was designed, manufactured, marketed, and intended to be used as swimwear, it cannot be classified as shorts. *Cf. Mast Industries*, 9 CIT 549 (factual determination that merchandise consisted of nightwear; therefore, could not be classified under the *eo nomine* provision for "shirts"). "Where an article is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and the difference is significant, it cannot find classification within such provision." *Robert Bosch Corp. et al.* v. *United States*, 63 Cust. Ct. 96, 103, C.D. 3881 (1969).

The fact that a garment could have a fugitive use or uses does not take it out of the classification of its original and primary use. The primary design, construction, and function of an article will be determinative of classification, whether or not there is an incidental or subordinate function. *Trans-Atlantic Co.* v. *United States*, 67 Cust. Ct. 296, 299, C.D. 4288 (1971), *aff'd*, 60 CCPA 100, C.A.D. 1088, 471 F.2d 1397 (1973). A swimsuit has been defined as "a garment designed for wearing while swimming." *The New Encyclopedia Brittanica*, Vol. II, at 446 (15th Ed. 1986). The fact that swimwear may be used for other incidental purposes unrelated to swimming, *e.g.*, boating, basketball, volleyball and bicycling, does not change its character as swimwear. If the garment was designed and constructed as swimwear, it shall be so classified.

### CONCLUSION

From all the evidence adduced at trial, this Court finds that the garment at issue herein is swimwear and, that plaintiff has met its burden in overcoming the presumption of correctness attached to the Customs decision. Therefore, judgment must be entered in plaintiff's favor, and the merchandise may be entered under item 381.6585, TSUS, under textile category designation 359.