(C.D. 2420)

Astra Trading Corp. *v.* United States

United States Customs Court, Second Division

(Decided November 7, 1963)

*Siegel, Mandell & Davidson* (*David Serko* and *Allan H. Kamnitz* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, and *James F. O'Hara*, trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges.

Lawrence, Judge: An importation described in the entry papers as "Camping Knives" was classified by the collector of customs within the provision for "knives by whatever name known, * * * which have folding or other than fixed blades or attachments," in paragraph 354 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 354), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and duty was imposed thereon at the rate of 17½ cents each and 27½ per centum ad valorem.

Plaintiff relies upon the claim in its protest that said merchandise should be classified in paragraph 397 of said act (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as articles or wares not specially provided for, in chief value of base metal, which are made dutiable at 20 [*sic* 21] per centum ad valorem.

Paragraph 354 of the Tariff Act of 1930, as modified, *supra*, a certain portion thereof being stressed, reads as follows:

Penknives, pocketknives, clasp knives, pruning knives, budding knives, erasers, manicure knives, and *all knives by whatever name known*, including such as are denominatively mentioned in the Tariff Act of 1930, *which have folding or other than fixed blades or attachments*, all the foregoing (except penknives and

pocketknives which have folding blades and steel handles ornamented or decorated with etchings or gilded designs or both), valued at more than $6 per dozen_____ 17½¢ each and 27½% ad val.

Paragraph 397 of said act, as modified, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:
    *         *         *         *         *         *         *
    Composed wholly or in chief value of iron, steel,
      * * * but not plated with platinum, gold, or
    silver, or colored with gold lacquer:
      *         *         *         *         *         *         *
    Not wholly or in chief value of tin * * *:
      Carriages, drays, * * *
        *         *         *         *         *         *         *
      Other * * *_____ 20% ad val.

At the trial, plaintiff introduced a sample of the subject merchandise, which was received in evidence as plaintiff's exhibit 1; also, plaintiff's illustrative exhibit 2, a leather case for carrying the article in a holster.

Plaintiff's exhibit 1 is composed of a handle, fashioned somewhat like a conventional pocketknife, the metal portion of the handle being covered with deer horn or a simulation thereof, and within the handle are the following articles: Knife blade, spoon, scissors, can opener and bottle opener, saw, fork, corkscrew, screwdriver, file, "utensil" knife, and awl.

The fork and spoon are of the conventional size; the knife blade is relatively large, approximately 3½ inches long, and has a sharp cutting edge. Based upon the testimonial record, those three items and the bottle and can opener would appear to be the predominant features of the article. The "utensil" blade, about 2 inches long with a sharp edge, and other attachments doubtless have their appropriate applications.

Two witnesses were called to testify, both of whom appeared on behalf of the plaintiff.

Edward Thaler testified that he was employed by the plaintiff company as a salesman, having been previously employed in the same capacity by Leibermann & Waelchli Co., Inc. As a salesman, he had been familiar with merchandise like plaintiff's exhibit 1 some 15 to 18 years. He had sold the article throughout the United States "to the camping trade, Army and Navy stores and sporting goods stores." He testified to their use "in camping sites and fishing trips" and that "It was used for eating food, cutting fish, and different things, cutting beef, and many things." When asked which of the utensils were most commonly used, the witness replied, "the knife and the fork and the can opener," to which he added later "The spoon." The witness stated that exhibit 1 is sold as a camping unit.

Plaintiff's second witness, Mrs. Jeanne Thomas, a housewife and Girl Scout leader, testified to the use of exhibit 1 on camping trips during the past 6½ years. As a leader of a Brownie Troop, consisting of girls between the ages of 7 and 10, she had used the fork, the spoon, can opener, and perhaps the saw, pointing out that the Brownies are not allowed to use the knives. The witness described the use of the commodity on a camping trip "in the daytime, where the girls prepare their own meal, make their own fire."

The sole question for our determination is whether an article, such as plaintiff's exhibit 1, is within the intendment of the provision for "all knives by whatever name known, including such as are denominatively mentioned in the Tariff Act of 1930, which have folding or other than fixed blades or attachments * * *."

An examination of the various tariff provisions for knives, together with the judicial history of those provisions, leads to the conclusion that the collector's classification should be sustained.

The provision for "all knives by whatever name known, * * * which have folding or other than fixed blades or attachments" was first contained in paragraph 152 of the Tariff Act of 1909.

It is a fair inference that the above-quoted language was incorporated in the knife provision as a result of a decision of this court (then Board of General Appraisers) in A. Kastor & Bros. v. United States, 7 Treas. Dec. 871, T.D. 25335 (1904).

The merchandise in that case was described by the court as follows:

The article represented by Exhibit 1 * * * is in the form of a pocketknife, and has, besides a cutting blade and a three-prong fork, which fold into the handle in the usual manner, a spoon that is hinged to the handle, but folds up outside of the handle, fitting snugly against it. A corkscrew and a smaller knife blade complete the equipment. The article is so constructed that it can be separated into three parts, and the said parts used as a knife, fork, and spoon, respectively. In the trade these articles are known as camping knives, and are sold, each in a leatherette carton or case. They are usually carried in lunch baskets, being too large and cumbersome to be carried in the pocket.

The article represented by Exhibits 2 and 3 * * * contains a knife blade and a fork, both of which fold into the handle, and it is also separable so that the knife and fork can be used separately. In size, shape, and general character these are undoubtedly pocketknives, being intended to be carried in the pocket and being made for express use as such. The fact that they include a fork and that they can be separated so that the knife and fork can be used separately is not sufficient to take them out of the category of pocketknives. * * * Many pocketknives are made which are provided, in addition to the cutting blades, with a corkscrew, scissors, nail cleaners, nail files, tweezer, punch, saw, and other articles of utility. * * *

Also—

A knife with two folding blades, one 5¾ inches in length, the other 3 inches in length. At one end of the handle is a ring by which the knife can be suspended from the waist or belt of the user. This is clearly a hunting knife, and the Government admits it was erroneously assessed. * * *

All of the articles before the court in the *Kastor* case had been classified as pocketknives, which were dutiable at appropriate specific rates in paragraph 153 of the Tariff Act of 1897. The court held that the article represented by exhibits 2 and 3 was properly so classified, but that the article represented by exhibit 1 and the knife with the two folding blades were not pocketknives.

As above indicated, knowledge of this decision may well have been one of the motivating reasons why Congress, in the Tariff Act of 1909, provided specifically for knives having other than "fixed blades or attachments."

In *Wilfred Schade Forwarding Co.* v. *United States*, 31 Treas. Dec. 241, T.D. 36702 (1916), the court (then Board of General Appraisers) was concerned with the classification of camping knives, having folding blades and spoon and fork attachments, within the provision for "all knives by whatever name known, * * * which have folding or other than fixed blades or attachments" contained in paragraph 128 of the Tariff Act of 1913. The importer, in that case, claimed that the merchandise should be classified as an article of metal in paragraph 167 of said act.

In its opinion, the court noted that, whereas no testimony had been introduced by the importers in support of their contention, a sample of the merchandise demonstrated that the article was practically identical to the merchandise in the *Kastor* case, *supra*. The court concluded its opinion by stating that the knives there in question were camping knives "which have folding or other than fixed blades or attachments" and should be classified in said paragraph 128. In support of the court's conclusion in the *Schade* case, it is well to remark that the courts have many times stated that a sample "is ofttimes a very potent witness." *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T.D. 43090.

In *Comex Trading Co.* v. *United States*, 3 Cust. Ct. 69, C.D. 205 (1939), the court described the merchandise before it as consisting "of a knife handle with a folding knife blade, a folding corkscrew, and a folding bottle-cap remover." The article had been classified within the provision for "knives by whatever name known * * * which have folding or other than fixed blades or attachments" in paragraph 354 of the Tariff Act of 1930. The claims of the importer in that case that the article was dutiable either as a household utensil or an article in chief value of metal were rejected.

In reaching its conclusion that the article had been properly classified by the collector, the court cited with approval and followed the earlier decisions in the *Kastor* and *Schade* cases, above discussed.

It will be observed that the three judicial authorities above considered were rendered over a period of 35 years and involved the dutiable classification of types of knives with "folding or other than

fixed blades or attachments" and three different tariff acts, 1897, 1913, and 1930.

Knowledge of the judicial rulings in the *Kastor* and *Schade* cases is imputed to Congress when it reenacted the provision for "knives by whatever name known \* \* \* which have folding or other than fixed blades or attachments" in the Tariff Acts of 1922 and 1930, thereby indicating the breadth of meaning which Congress attached to the quoted phrase.

The case of *Paul E. Sernau, Inc.* v. *United States*, 46 Cust. Ct. 514, Abstract 65737 (1961), cited by plaintiff in its brief, is without significance here. That case related to so-called knives, 1⅛ inches long, which were so small, cheap, flimsy, and fragile, and lacking a cutting quality, that the court held they did not respond to the common conception of a knife, but should be classified as articles of metal, not specially provided for, in paragraph 397 of the Tariff Act of 1930.

Upon the record before us and for the reasons stated, the protest is overruled and judgment will issue accordingly.