**E. M. STEVENS CORP.**

**v.**

**UNITED STATES.**

**C.D. 3033; Protest 58/24746—11541–58.**

United States Customs Court,
Second Division.

Decided June 12, 1967.

Siegel, Mandell & Davidson, New York City (Allan H. Kamnitz and David Serko, New York City, of counsel), for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Sheila N. Ziff and S. William Barr, Trial Attys., New York City), for defendant.

Before RAO, FORD and LANDIS, Judges.

LANDIS, Judge:

The imported merchandise under protest herein is a stainless steel money "clip-knife", being a housing approximately 2 inches by 1 inch by one-eighth of an inch onto which is affixed a money clip, a nail file, and a knife blade. The two latter attachments, each about one and one-half inches long, fold back into the housing, as does a blade into a pen knife. A smooth rectangular surface suitable for engraving on the back of the money clip is provided.

The collector of customs classified the article under paragraph 354 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (T.D. 52739), supplemented by T.D. 52820, as knives with folding or other than fixed blades or attachments, valued over $3 a dozen, but not over $6 a dozen, and assessed duty thereon at the rate of 12½ cents each and 25 per centum ad valorem.

At the trial, the court granted plaintiff's motion to amend the protest to add a claim under paragraph 1527(c) (2) of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade (T.D. 53865), supplemented by T.D. 53877, and to abandon its claim under paragraph 1513, as modified. This latter claim, accordingly, is dismissed.

Plaintiff's contention is that the merchandise is a combination article designed to be carried on or about the person and is *ejusdem generis* with articles enumerated in paragraph 1527(c) (2), as modified, supra, dutiable at 55 per centum ad valorem.

Plaintiff claims in the alternative that the merchandise falls within paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade (T. D. 54108), dutiable at 21 per centum ad valorem.

The pertinent provisions of the Tariff Act of 1930 are as follows:

Paragraph 354, as modified, supra:

Penknives, pocketknives, clasp knives, pruning knives, budding knives, erasers, manicure knives, and all knives by whatever name known, including such as are denominatively mentioned in the Tariff Act of 1930, which have folding or other than fixed blades or attachments, valued—

\* \* \* \* \* \* \* \* \* \* \* \*

Over $3 but not over $6 per dozen ..................12½¢ each and 25% ad val.

Paragraph 1527(c) (2), as modified, supra:

Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff and dress buttons, combs, \* \* \* powder cases, stamp cases, vanity cases, watch bracelets and like articles; all the foregoing and parts thereof, finished or unfinished, composed wholly or in chief value of metal other than gold or platinum \* \* \*:

Articles and parts \* \* \* valued not over $5 per dozen pieces or parts \* \* \* ...................55% ad val.

Paragraph 397, as modified, supra:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, \* \* \* but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \* \* \* \* \* \* \*

Other \* \* \* ...........................21% ad val.

———◆———

The issue is whether the "clip-knife" herein, represented by exhibit 1, was properly classified by the collector of customs, or is an article designed to be carried on or about the person within the purview of paragraph 1527(c) (2), supra, or, in the alternative, comes within the purview of paragraph 397, supra.

It was stipulated between the parties at the trial that exhibit 1, hereinafter re-

ferred to, was representative of the merchandise in controversy and that said exhibit 1 is wholly or in chief value of metal, other than gold or silver, and that said exhibit 1 is in chief value of stainless steel.

The record herein consists of the testimony of one witness, Mr. Maxwell Bentley, called by the plaintiff, and three exhibits introduced by the plaintiff. The defendant introduced no evidence.

Plaintiff's exhibit 2 is an advertising circular introduced to show how exhibit 1 is advertised for sale.

Plaintiff's exhibit 3, not in issue, was admitted into evidence as a comparative example of another style of money clip with a steel blade and nail file.

Mr. Maxwell Bentley, vice president of the plaintiff corporation, testified substantially, as follows:

The business of the corporation, since 1954, was importing and designing advertising specialties and business gifts for sale to jobbers in the United States. His duties included designing, purchasing, sales, and general management of the business since its inception.

Mr. Bentley identified exhibit 1, stating that he and his partner designed it in 1954, went to Italy that year and there gave their drawings from which the instant money-clip knife resulted. To his knowledge, they were the first to import a money-clip knife. His firm holds the Italian patent for it.

They attempted to make several other combinations with money clips; one with a watch attached, another with a card case, another to hold credit cards, two others with watches, and some with embossed advertisements of firms who gave them away.

There were standard dies overseas for knives, but when they started with money clips, special brand new dies had to be made to manufacture exhibit 1. This, he stated, consists of a stainless steel money clip with a knife and file and has an engine turned surface or design in front. No part of exhibit 1 was deferred to, was representative of the merchandise in controversy and that said pendent upon another to perform its intended function.

The witness identified an advertising circular, for which he said he wrote the copy (plaintiff's illustrative exhibit 2), showing how merchandise such as exhibit 1 was sold. A salesman, he stated, would display exhibit 1 by taking it out of his pocket with dollar bills in it, and incidentally would show the knife and file. He himself sold it in this manner. He stated that he saw only the money clip part used and never saw the knife blade or file used and that, in order to use either the blade or the file, the money would need to be removed from the clip. He testified that exhibit 1 was used primarily as a money clip, even though it had a knife and file feature.

On cross-examination, the witness stated that the blade in exhibit 1 is a folding blade; that the article is advertised as a money-clip knife, with special reference to the knife. He said that they did at one time sell money clips without an attachment, but now they sell the "money clip and knife combination," exhibit 1.

On redirect examination, the witness stated that the circular which he wrote (plaintiff's illustrative exhibit 2) called attention to the advertising feature of the clip-knife at bar, as follows:

> * * * Well, if a man reaches for his folding money just five times a day * * * and for his knife or nail file just five times a week, it means he will be reminded of your products or services 2080 times a year.

It is the defendant's contention that exhibit 1 is a combination knife and money clip, having the characteristic attributes of a knife, and that, despite its other features, it is still a knife, and was properly classified by the collector of customs under paragraph 354 supra, which provides broadly for knives, including "all knives by whatever name known."

In a case cited by both counsel, Paul E. Sernau, Inc. v. United States, 46 Cust. Ct. 514, 515, Abstract 65737, certain im-

ported merchandise was invoiced as "Toy pocket knives," one and one-eighth of an inch long. These could be used as key-chain charms and were so sold to novelty people under the designation of key-chain novelties. The knife blade therein was crude and of flimsy construction, and, although in the form of a knife, it did not have the attributes of a knife in that it was not a cutting instrument, but a novelty charm having no practical use as a knife. The court did not classify it as a knife. Concerning the tariff provision "all knives by whatever name known," the court stated:

> * * * It must be borne in mind that for the above clause to be effective, the involved article must, in fact, be a knife.

■ It is the province of the court, as a matter of law, to determine whether the article at bar falls within the common meaning of the term "knife." In United States v. Florea & Co., Inc., 25 CCPA 292, 296, T.D. 49396, the court stated (citing also Marvel v. Merritt, 116 U.S. 11, 6 S.Ct. 207, 29 L.Ed. 550; and United States v. North American Mercantile Co., 17 CCPA 378, T.D. 43820):

> It has long been conclusively settled that the common meaning of a term is not an issue of fact but is a matter of law. * * *

The court may take recourse to dictionaries, lexicographical authorities, and any other reliable source, including cases already adjudicated on the subject.

In Webster's New International Dictionary, 1927 edition, unabridged, the word "knife" is defined as follows (page 1192):

> 1. An instrument consisting (in its modern form) of a thin blade, usually of steel and having a sharp edge for cutting, fastened to a handle; a longitudinally edged instrument operated by pressure. Knives are of many different forms for different uses; * * *.

Also in Webster's Third New International Dictionary, 1966 edition, una-

bridged, the word "knife" is defined as follows (page 1249):

> 1a: a simple instrument used for cutting consisting of a sharp-edged usu. steel blade provided with a handle.

Further on the subject of the common meaning of a term, in Hartmann Trunk Co. v. United States, 27 CCPA 254, 257, C.A.D. 95, cited by defendant, the court stated:

> * * * tariff acts are not drawn in the terms of science, but in the language of commerce, which is presumptively that in common use. * * *

Like language is also cited in Bakelite Corporation et al. v. United States, 16 Ct.Cust.App. 378, 381, T.D. 43117.

■ From these cases and others reiterating those pertinent legal principles, it is established that, despite any scientific definition of a term by expert witnesses, this court is not bound by the testimony of such witnesses but may resort to any source or sources earlier mentioned to determine the common meaning of the term "knife" in the case at bar.

The broad tariff expression embracing all knives "by whatever name known" leads to earlier cases on knives.

In A. Kastor & Bros. v. United States (1904), 7 Treas. Dec. 871, T.D. 25335, one of the imported items was a knife with a cutting blade, and a fork, both of which folded into a handle. The court held the item classifiable as a pocket-knife.

Wilfred Schade Forwarding Co. v. United States (1916), 31 Treas. Dec. 241, T.D. 36702, involved camping knives with folding blades and spoon and fork attachments, which the court held classifiable under the provision for "all knives by whatever name known."

Irwin & Co. v. United States (1911), 2 Ct.Cust.App. 296, T.D. 32039, involved metal erasers with fixed blades. They were held properly classifiable under paragraph 152 of the Tariff Act of 1909, the corresponding knife paragraph 354 of the Tariff Act of 1930.

In Crystal Craft, Inc. v. United States, 37 Cust.Ct. 368, Abstract 60247, plaintiff

protested the classification of a certain "miniature knife" under paragraph 1527 (c) (2) of the Tariff Act of 1930, as modified by T.D. 51802, supplemented by T.D. 51898, as articles designed to be carried on or about or attached to the person. Plaintiff claimed that the articles were penknives, properly classifiable under paragraph 354 of said act, as modified, supra. The uncontradicted evidence established that the merchandise was a penknife, approximately 1⅜ inches in length, equipped with a folding blade, 1 inch long, and having attached thereto a so-called "jump-ring" which permitted the knife to be readily attached to a key chain for convenience in use. The record showed that the penknife was used to sharpen pencils, scrape out a pipe bowl, cut string, and cut the end of a cigar.

The court there stated:

That the penknife in question may be carried on or about the person, does not militate against its classification under paragraph 354, as amended, supra. The provisions thereof are most comprehensive, as they include all penknives which * * * have a folding blade * * *.

In Astra Trading Corp. v. United States, 51 Cust.Ct. 132, C.D. 2420, the court held that camping knives with folding blades, spoon, fork, bottle opener, and other attachments, were properly classifiable under paragraph 354 of the Tariff Act of 1930, as modified by T.D. 51802, as "knives by whatever name known, * * * which have folding or other than fixed blades or attachments."

In the case at bar, the Government's position leans most importantly on two cases, which counsel terms in its brief, as "leading cases," Silberstein v. United States (1912), 3 Ct.Cust.App. 239, T.D. 32562; and Voss Cutlery Co. v. United States, 29 Cust.Ct. 127, C.D. 1457; affirmed (1953) 41 CCPA 42, C.A.D. 526.

The merchandise in the *Silberstein* case, supra, consisted of penknives with letter-opener attachments, which were classified as "knives with folding blades," under paragraph 152 of the

Tariff Act of 1909. The court, in affirming the collector's classification and the decision of the Board of General Appraisers (now the United States Customs Court), stated at page 240:

It clearly appears from the samples in evidence that the merchandise * * is a combination penknife * * * a small knife with some attachment other than the usual blade or blades folding into the handle. The fact that a strip of metal suitable for opening envelopes has been firmly riveted to the handle no more changes the character of the article than if the handle had been designed to serve as a screw driver or had been fitted with the assortment of useful little implements usually found in the combination knife. The knife is something more than the ordinary penknife. Still it is a knife, and a knife which has "folding or other than fixed blades or attachments." As knives of that character, by whatever name known, are dutiable under paragraph 152 * * ** we are of opinion that the importation was correctly classified * * *.

It is interesting to note that in its opinion in A. L. Silberstein v. United States, 21 Treas. Dec. 231, 232, Abstract 26615, affirmed on appeal (3 Ct.Cust.App. 239), the Board of General Appraisers referred to the merchandise as follows:

* * * It is a combination article. The provision for "all knives by whatever name known," paragraph 152, must cover the goods * * * for the wording refers to such as have "other than fixed blades or attachments." We regard the said provision as embracing all knives with folding blades whether or not they are likewise supplied with fixed blades or attachments. * * *

In Voss Cutlery Co. v. United States, supra, the merchandise was a combination knife and letter opener, about 8 inches long, in chief value of steel, having a handle 3 inches long similar to the conventional pocketknife handle, with a knife blade which folded into the handle, and a letter-opener attachment firmly

riveted to the handle. The merchandise was classified under paragraph 354 of the Tariff Act of 1930, as a penknife with a folding blade. Plaintiff claimed the merchandise was properly classifiable under paragraph 397 of the said act as manufactures of metal, not specially provided for.

Both this court and our appellate court affirmed the classification under paragraph 354, citing the *Silberstein* case (3 Ct.Cust.App. 239), supra, as controlling. In so holding, this court stated:

> The *Silberstein* case, supra, was decided 40 years ago and, so far as we can learn, has never been reversed or modified. Moreover, the fact that, after the decision in said case, Congress reenacted the provision therein construed in practically identical language in the Tariff Acts of 1913, 1922, and 1930, appears to be a clear case of congressional approval of judicial construction, and would seem to compel the conclusion herein reached.

We note from a careful reading of the *Silberstein* case that it does not disclose the dimensions of the article. Apparently, the court had the "potent witness" before it, but the reader knows from the description that it was a combination knife and letter opener. The court in deciding the *Voss* case, supra, stated that it found the *Silberstein* case, supra, controlling.

■ All of the foregoing would indicate, in our judgment, quite firmly that exhibit 1 before us is still a knife despite the money clip and nail file attachments, classifiable under the knife provision, paragraph 354, supra.

We have considered carefully the arguments and cases cited by the plaintiff.

■ The cases of Gallagher & Ascher et al. v. United States, 6 Ct.Cust.App. 105, T.D. 35343; Lionel Trading Co. v. United States, 15 Ct.Cust.App. 365, T.D. 42562; and Coty (Inc.) v. United States, 18 CCPA 33, T.D. 44003, cited by plaintiff, are not pertinent to the case at bar. None of these cases dealt with the applicability of paragraph 354 of the Tariff Act of 1930, as modified, supra (pertaining to knives), and under which the instant merchandise was classified. Instead these cases were concerned with the correctness of the classification by the collector under sections pertaining to articles worn or carried about or upon the person. However, as heretofore discussed, the fact that a type of knife may be in a general category of articles carried on or about the person does not militate against its classification under paragraph 354, supra, in the case at bar. The provisions of paragraph 354 are most comprehensive as they specifically include all knives which, like the articles in question, have a folding blade. Crystal Craft, Inc. v. United States, supra.

After considering the unambiguous and comprehensive knife provision of paragraph 354, as modified, supra, which provides broadly for "all knives by whatever name known," and based upon the *Silberstein* and *Voss* cases, supra, together with pertinent language from the *Crystal Craft* case, supra, wherein the court stated that the fact that an article was designed to be carried on or about the person did not "militate against its classification under paragraph 354," it is the opinion of this court, and we so hold, that the merchandise at bar was properly classified under the said paragraph 354, supra. Accordingly, the plaintiff's claim that the merchandise should have been classified under paragraph 1527(c) (2), supra, and plaintiff's alternate claim under paragraph 397, supra, are hereby dismissed. The collector's classification is affirmed, and the plaintiff's protest is overruled.

Judgment will issue accordingly.

RAO, C. J., and FORD, J., concur.