**J. M. ALTIERI, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Protest 66/80269–24; C.D. 3687.**

United States Customs Court,
Second Division.

Feb. 4, 1969.

---

Robert N. Altman, New York City, for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Bernard J. Babb, New York City, trial attorney), for defendant.

Before RAO and FORD, Judges.

RAO, Chief Judge:

The merchandise involved in this case consists of knives having folding blades which were entered at the port of San

Juan, Puerto Rico, and assessed with duty at 17.5 cents each and 27.5 per centum ad valorem under item 649.87, Tariff Schedules of the United States, as pruning knives. It is claimed that they are properly dutiable at 50 per centum ad valorem under item 649.75 under the provision for pen knives, pocket knives, or other knives, which have folding or other than fixed blades or attachments, valued over 50 cents but not over $1.25 per dozen. (The official papers indicate that the imported merchandise was entered and appraised at $1.24 per dozen.)

The pertinent provisions of the tariff schedules are as follows:

> Pen knives, pocket knives, and other knives, all the foregoing which have folding or other than fixed blades or attachments; and blades, handles, and other parts thereof:
> Knives:
> \*      \*      \*      \*      \*      \*      \*      \*
> 649.75   Valued over 50 cents but not over $1.25 per dozen ............................ 0¢ (1.83¢) each + 50% (42.5%) ad val.
>
> \*      \*      \*      \*      \*      \*      \*      \*
> Budding, grafting, and pruning knives, and blades, handles, and other parts thereof:
> 649.87   Knives ............................ 17.5¢ each + 27.5%· ad val.

———◆———

At the trial, plaintiff called Abraham Wagner, one of the owners of Wagner Brothers Import Company, the importer herein. He testified that he had been with the firm 6 years and that its business was the importation of general merchandise and the sale thereof to retailers. Its sales were made in Puerto Rico and occasionally to customers from the Virgin Islands. The duties of the witness included buying and selling and he was familiar with the imported merchandise.

A sample was received in evidence as exhibit 1. It consists of a knife with a folding blade, measuring about 3½ inches long when closed. The blade is three-fourths of an inch wide at its widest part and is curved or hooked, rather than straight and pointed at the end. The edge of the blade folds into and is protected by the handle, but a substantial portion protrudes when the knife is closed.

The witness testified that he imports pocket knives, kitchen knives, and butcher knives, which he sells to retailers and to bazaars. He had never ordered a pruning knife or sold knives such as those involved here to a nursery or garden tool supplier. The retail price of the instant knives ranges from 29 to 39 cents each.

Mr. Wagner testified that he sold pocket knives, such as, or similar to, those introduced in evidence by defendant as exhibits A, B, and C. These are familiar pocket knives in different sizes. The witness stated that the blade of exhibit 1 was wider than the blades of defendant's exhibits and that it broadened as it went to the end of the blade so as to form a kind of a hook on the end.

Plaintiff also called William Pennock, a horticulturist in charge of research with fruit crops at the Agricultural Experiment Station which is part of the University of Puerto Rico. He said that

he has been employed in his present capacity for 18 years; that his duties include experiments with various fruits, and that he received bachelor's and master's degrees from Cornell University in 1931 and 1936, respectively. He has also worked with Merch & Company in the production of Cinchona, and with the United Fruit Company in the production of a number of different crops. He also has a small enterprise of his own in the production of ornamental plants.

Mr. Pennock testified that he uses a pruning knife in his professional capacity, generally a combination grafting and pruning knife. He has bought and seen many pruning knives and is familiar with the general price of such articles. He said that the minimum price is about $3.00 and that he generally pays $5.00 or $6.00. In his opinion, from the point of view of a horticulturist, a pruning knife should have a good blade that will hold an edge and it should be strong in construction.

The witness had been shown knives like exhibit 1 about 4 days before and had tried one out. He sharpened it on a whet stone and tried cutting plant stems, such as bamboo, mango, and citrus, with it. He noticed that the blade was very soft and could be bent easily and that it did not hold an edge. He said that after cutting one or two stems the edge was gone and the blade had to be sharpened and straightened out. He would not use it as a pruning knife.

The witness testified that there are various kinds of grafting and pruning knives which differ in respect to the shape of the blades. He was familiar with pruning knives shaped like exhibit 1. He identified illustrations of articles which he recognized as pruning knives in defendant's exhibits D (a page headed Hoffritz Cutlery), E (a page headed J. A. Henckels Twin Brand Cutlery), F (Hand Book of Nursery and Garden Tools, A. M. Leonard & Sons, Inc.), G (Nasco General Catalog, and H (Sears, Roebuck & Co. catalog). He said that they were quite similar in shape to exhibit 1. He agreed that the knives marked exhibits A, B, and C have a different configuration from those which he characterized as pruning knives. Nevertheless, in his opinion, a knife was not a pruning knife unless it had a good blade which would hold an edge.

On the record presented, plaintiff claims that the imported merchandise is a pocket knife, that is, a knife with a blade folding into the handle to fit it for carrying in the pocket, and that the evidence established that it was not suitable for use as a pruning knife because the blade was soft, could be bent, and did not hold an edge.

Defendant claims that the classification reflects a finding by the district director that the imported merchandise is a pruning knife or a knife chiefly used for pruning, and that the plaintiff has not sustained its burden of proving the contrary.

We are in accord with the Government that plaintiff has not established that these knives do not belong to the class or kind of articles chiefly used in the United States as pruning knives at or immediately prior to the date of importation. The imported articles resemble in shape knives identified by plaintiff's witness as pruning knives. While they may be of poorer quality than the kind he would use professionally, they are not flimsy or obviously unsuitable for use in pruning. Plaintiff's witness tried them only to cut stems of large plants, such as bamboo, mangos, or citrus fruits. His experience appears to have been limited to Puerto Rico and places outside the United States.

The imported merchandise may not be a pocket knife, as that term is commonly understood, but it is a knife having a folding blade. It is, therefore, described in item 649.75. It is also a pruning knife described in item 649.87. Since the latter is a use provision, it takes precedence over the *eo nomine* provision in item 649.75, unless a con-

trary congressional intent is manifest. Sandoz Chemical Works, Inc. v. United States, 43 CCPA 152, 158–159, C.A.D. 623; United States v. Lansen-Naeve Corp., 44 CCPA 31, 33, C.A.D. 632; United States v. S. H. Kress & Co., 46 CCPA 135, 137, C.A.D. 716.

We are not unmindful of some statements in the Tariff Classification Study of November 15, 1960, Schedule 6, Part 3, page 195, and in the Summaries of Trade and Tariff Information (1968), Schedule 6, volume 6, page 189, which tend to suggest that the provision for pruning knives was conceived to be limited to fixed blade knives or those over a certain value. While such extrinsic aids may be used for the purpose of ascertaining congressional intent where the statute is ambiguous, they may not be resorted to where the language thereof is clear. Rifkin Textiles Corp. v. United States, 54 CCPA 138, C.A.D. 925; V. G. Nahrgang v. United States, 51 CCPA 76, C.A.D. 840.

The superior heading to item 649.87 provides for pruning knives, *inter alia*, without exception and with no restriction on the type of blade or the value of the knife. There is nothing ambiguous about it. To read into it the limitations referred to in the above publications would be creating ambiguity where none exists. This is not a permissible method of construction. Universal Transcontinental Corp. v. United States, 40 CCPA 54, 58, C.A.D. 497; Package Machinery Co. v. United States, 41 CCPA 63, 68, C.A.D. 530.

It is also of significance that the provisions for knives with folding blades and for pruning knives in the Tariff Act of 1930 differed from those in the Tariff Schedules of the United States, *supra*. Paragraph 354 of the said tariff act provided in part:

Penknives, pocketknives, clasp knives, pruning knives, budding knives, erasers, manicure knives, and all knives by whatever name known, including such as are denominatively mentioned in this Act, which have folding or other than fixed blades or attachments, * * *.

That paragraph was evidently intended to be invasive and has been construed to be a comprehensive one, including all knives which have folding blades. Silberstein v. United States, 3 Ct.Cust. Appls. 239, T.D. 32562; Voss Cutlery Co. v. United States, 41 CCPA 42, C.A.D. 526; Astra Trading Corp. v. United States, 51 Cust.Ct. 132, C.D. 2420; E. M. Stevens Corp. v. United States, 58 Cust. Ct. 512, C.D. 3033.

The Tariff Schedules of the United States divided the knife provisions in paragraph 354 among several items, including items 649.71–649.85 under the superior heading for penknives and other knives with folding blades quoted above, and items 649.87–649.89 under the superior heading for budding, grafting, and pruning knives. It omitted the invasive language. In taking budding, grafting, and pruning knives out of the provision for knives with folding blades, Congress was manifesting an intent that they be classified under the special provision therefor and not under the general provisions for knives with folding blades. A change in the wording of a statute ordinarily imports a change of meaning unless a contrary intent plainly appears. Cellas, Inc. v. United States, 18 CCPA 237, 241, T.D. 44405; Fynaut & Popek v. United States, 23 CCPA 265, 269, T.D. 48112. We find no such intent in the instant case.

For the reasons stated, the protest is overruled and judgment will be entered for the defendant.