(C.D. 3852)

SHERRIFF-GUERRINGUE, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided June 24, 1969)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman* and *Jeffrey D. Latten*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This case involves the tariff classification of toy saxophones which have, in addition to their musical features, a mechanism for blowing bubbles. The articles were imported from Hong Kong and entered at Seattle where they were classified by the district director of customs under item 737.90 of the Tariff Schedules of the United States (19 U.S.C. § 1202) as toys, not specifically provided for, dutiable at 35 percent ad valorem.[1] Plaintiff claims that the articles are properly classifiable as toy musical instruments under item 737.60, dutiable at only 26 percent.[2] We hold that the district director correctly classified the articles as toys under item 737.90.

The imported article consists of a moulded plastic form—about 10½ inches in overall length—which resembles a miniature saxophone in curvature and configuration. It has moulded keys and levers which do not move and have no function other than to simulate the keys and levers found on a real saxophone. Also, it has a mouthpiece at one end, and a wide opening, or bell, at the other. In the bell is a wheel-like apparatus affixed to a crank protruding through the side of the bell, with the turning of the crank causing the wheel to rotate. Directly beneath the wheel mechanism are two air nozzles, and on the exterior of the article, approximately 1½ inches below the crank, is a metal reed. When air is blown into the mouthpiece, it flows over the reed, producing a monotone sound, and, simultaneously, flows from the two nozzles through the wheel. If a soap or bubble solution has been poured into the bell and the crank turned, bubbles are produced and emitted at the same time the sound is being made.

The imported articles were delivered to the Specialty Sales Co. of Seattle, Washington, whose president testified that they were sold to chain stores throughout the country, and to carnivals and fairs.[3] He stated that he was in charge of a sales counter at one such fair in Vancouver, British Columbia, and that he had observed 20,000 to 30,000 children using the article. He further stated that in over 50 percent

---

[1] Item 737.90 covers "Toys, and parts of toys, not specially provided for: * * * Other."

[2] Item 737.60 provides for "Toy musical instruments."

[3] Plaintiff presented an additional witness who testified merely that the importations in dispute were sold to the Specialty Sales Co. Defendant called no witnesses.

of the purchases that he had seen at that fair and other fairs in the State of Washington and at dime stores, the children did not buy the bubble solution which was sold separately and were not observed using the item at that time for bubble-blowing purposes.

On cross-examination the witness indicated that the article was designed to blow bubbles and is described in an accompanying instruction sheet as a musical bubble-blowing saxophone. He conceded that the bubble-blowing mechanism is an integral part of the article—which cannot be removed therefrom; that the article has more features than a saxophone since a saxophone does not have a bubble-blowing mechanism in the horn or a crank to manipulate that mechanism; and that the presence of the bubble-blowing mechanism increases the article's sales appeal. He insisted, however, that the latter feature of the article performs only an incidental function.

In this context, plaintiff argues that the importation should be classified as a toy musical instrument rather than as a toy because it is in the form and shape of a musical instrument and emits sound. It also contends that the item is not "more than" a toy musical instrument on the basis that the bubble-blowing mechanism is—assertedly—an incidental feature. It adds in this connection that the article retains its identity as a saxophone and emits a sound, and that the testimony of its witness and an examination of the sample establish that the article's chief use and character are that of a toy musical instrument.

It should be pointed out at the beginning that it is unnecessary to decide whether, in the absence of the bubble-blowing mechanism, the imported article would be classifiable as a toy musical instrument rather than a toy. For even assuming *arguendo* that it would, the presence of the bubble-blowing apparatus clearly makes the article *more than* a toy musical instrument. For the record establishes (as we have seen) that the bubble-blowing mechanism is an integral and non-segregable part of the article, and that this mechanism and the musical part each constitutes an essential component of the finished article. In other words, the article before us incorporates into one integral unit the separate function of two separate toys—a toy saxophone and a child's bubble pipe, and thus constitutes a new commercial article with an unique and distinctive character of its own. "An article will be excluded from its normal provision when, by virtue of joinder with another article, it becomes an inseparable part of a multifunction entity. That is to say, when the change undergone is no longer merely an evolutionary advance or the addition of a subsidiary auxiliary part, the changed article becomes more than that which it formerly was." *V. Alexander & Company, Inc.* v. *United States*, 59 Cust. Ct. 510, 514, C.D. 3212, 276 F. Supp. 573, 576 (1967). See also *Garrard*

*Sales Corp.* v. *United States*, 35 CCPA 39, C.A.D. 369 (1947) (combination phonograph and radio held not to be a phonograph) ; *A. Tanzi Engineering Co., Schneider Bros. & Co., Inc.* v. *United States*, 30 Cust. Ct. 4, C.D. 1490 (1952) (machine that both cuts and rolls pastry dough is more than either a cutter or roller) ; *Kaufman & Vinson Co.* v. *United States*, 44 Cust. Ct. 238, C.D. 2180 (1960) (combination map-measurer and magnetic compass is more than a measuring instrument).

Closely in point is *Cragstan Corporation* v. *United States*, 51 CCPA 27, C.A.D. 832 (1963). In that case the importation consisted of a baby doll supported in an upright position by a metal walker. A self-contained spring motor enabled the doll to "walk." Plaintiff claimed that the classification by the government as a toy having a spring mechanism was erroneous, and that the article should have been classified as a toy figure of an animate object because the walker served only to support the doll in a walking position, thereby enabling it to have lifelike mobility or animation. The court held that the article was more than a toy figure of an animate object and as such was properly classified by the government as a toy having a spring mechanism. The basis of the holding was expressed thus (51 CCPA at 29–30) :

> Obviously the imported toy is something more than just a figure or image of an animate object. The walker is not incidental—just a brace to hold the baby doll upright—*the walker gives the toy its unique and distinctive character and without it the toy would be merely another baby doll*. The toy, as an entity, consists of two components, both equally essential, the baby doll and the walking mechanism, the latter having wheels and part thereof being permanently attached to the baby doll. The walking mechanism is an integral part of the toy. * * *
>
> *       *       *       *       *       *       *
>
> * * * The logical conclusion of appellant's argument is that a baby doll should be classified in the same category as a baby doll in a walker and since a *baby doll in a walker is an entirely different toy than without the walker*, we believe that it was not the intention of Congress that they both have the same classification. [Emphasis added.]

Here, too, the article consists of two components, both equally essential—the toy instrument and the bubble-blowing mechanism—which give the article its unique and distinctive character and without which the article would be no more than another toy instrument. To paraphrase from what was said in *Cragstan*, since the present article with the bubble-blowing mechanism is an entirely different article than without that mechanism, we believe that it was not the intention of Congress that they both have the same classification.

Relevant also is *H. Hudson Dobson; Milton Snedeker Corp.* v. *United States*, 28 Cust. Ct. 290, C.D. 1424 (1952), in which metal

toys such as trucks and motorcycles, each having permanently attached thereto replicas of human figures, were held to be more than figures or images of animate objects and as such were classified as toys not specially provided for. The court had this to say (28 Cust. Ct. at 294):

> The figure of the animate object in each article is not segregable from the rest of the item, but each is a component part of the toy article under consideration. Further, the portion of each article representing the inanimate object constitutes a substantial part of the item in question. One portion of the article contributes as much to the completed article as the other. We hold, therefore, that the imported items, each an entity in itself, are something more than "figures or images of animate objects."

See also *Novelty Import Co., Inc.* v. *United States*, 58 Cust. Ct. 59, 62, C.D. 2889 (1967); *New York Merchandise Co., Inc.* v. *United States*, 62 Cust. Ct. 283, C.D. 3746 (1969).

Plaintiff, however, adverts to the testimony of its witness that in over 50 percent of the purchases that he has seen at fairs and dime stores, the children did not buy the bubble solution and were not observed using the bubble-blowing feature. From this plaintiff concludes—as did the witness—that the bubble-blowing function is an incidental feature of the article. The argument has little merit. For the question in a situation like that here is not how the article was actually used but what it was constructed and designed to do. See e.g., *Dubrow & Hearne Manufacturing Co.* v. *United States*, 9 Ct. Cust. Appls. 148, 152, T.D. 37993 (1919); *United-Carr Fastener Corporation* v. *United States*, 56 Cust. Ct. 347, 351–52, C.D. 2648 (1966).

Particularly pertinent is *Clutsom Machines, Inc.* v. *United States*, 21 Cust. Ct. 30, C.D. 1122 (1948). In *Clutsom* a textile machine which was designed as a combination weaving and knitting machine was classified under paragraph 372 of the Tariff Act of 1930 as textile machinery not specially provided for, at a rate of 40 percent ad valorem. The plaintiff claimed that duty should have been assessed at 25 percent ad valorem under paragraph 372 of the Tariff Act of 1930, as modified by the British Trade Agreement, T.D. 49753, which provided for "Textile machinery, finished or unfinished, not specially provided for * * * (except * * * looms * * *)." The government claimed that the machines were within the common meaning of the word "loom" in that they performed a weaving function and were thereby excluded from assessment under the claimed rate of 25 percent ad valorem. The court found that the "Clutsom machines" performed the dual function of weaving and knitting; were designed to perform this dual function; and could not be converted to perform the single function by the addition or removal of any attachments. Thus, the machine was held not to be within the common meaning of

the word "loom" and was, therefore, not excluded from the rate of 25 percent ad valorem. The claim that the machine was a loom because its operation involved 90 percent weaving and only 10 percent knitting was rejected by the court in the following language (21 Cust. Ct. at 37):

> * * * We cannot subscribe to the proposition that the classification of these machines depends upon the percentage of the type of work performed. Otherwise where should the line be drawn? The decision must rest upon a firmer foundation which we believe should be determined largely by a consideration of the design, character, and purpose of the invention.

Similarly there can be no doubt from an examination of the present sample that the article is designed to do two things—blow bubbles and emit sound—and that neither function is incidental to the other. Thus, examination of the same shows that the bubble-blowing mechanism consists of several parts of appreciable size, including the crank, the wheel, and two nozzles that direct the air through the wheel carrying the bubble solution—all of which obviously required a significant amount of design and engineering to yield a workable product. Furthermore, as plaintiff's witness indicated, the article is designed to blow bubbles; is described in the instructional sheet as a musical bubble-blowing saxophone; and the bubble-blowing feature increases the article's sales appeal. In short, considering the design, character and purpose of the imported article as both a toy musical instrument and a bubble pipe, its classification under item 737.60—which provides for only one of these functions (i.e., that of a toy instrument)—is obviously precluded.

But even if (as plaintiff insists) chief use were to be deemed determinative as to whether or not the bubble-blowing mechanism constitutes an incidental function of the imported article, the evidence presented by plaintiff falls far short of establishing such use. For one thing, the observations of the witness—limited as they were to a particular geographical area—are of little probative value as to the use of the articles in the United States. Nor can we conclude from the fact that 50 percent of the sales were made without a bubble solution that the imported articles were not used principally for blowing bubbles. For it is common knowledge that more frequently than not a bubble solution is made at home by combining a detergent or soap with water. Moreover, not every toy is fully utilized upon purchase at the counter—and this would seem particularly true of toys using a bubble solution.

Plaintiff, in further support of its position that the imported article—though a combination one—should nevertheless be classified as a toy musical instrument rather than a toy, relies on the cases set out below in which multifeature articles were classified under the

specific provision covering the predominating feature. But each of the cases so relied upon is clearly distinguishable on the basis of the specific statutory language or the facts. Thus in *E. M. Stevens Corp. v. United States*, 58 Cust. Ct. 512, C.D. 3033, 270 F. Supp. 25 (1967); *Voss Cutlery Co. v. United States*, 29 Cust. Ct. 127, C.D. 1457 (1952); and *Astra Trading Corp. v. United States*, 51 Cust. Ct. 132, C.D. 2420 (1963), a money clip with folding nail file and knife blades; a combination knife and letter opener; and a camping knife with folding blades, spoon, fork, bottle opener and other attachments were respectively held to be properly classifiable as "knives" under paragraph 354 of the Tariff Act of 1930. That paragraph, however, covered "knives by whatever name known * * * which have folding or other than fixed blades *or attachments*" [emphasis added], and it was by virtue of this provision for "attachments" that the knives containing the above additional features were properly classifiable under paragraph 354. Here by contrast, the tariff item under which plaintiff makes its claim, i.e., item 737.60, covers only "toy musical instruments" and hence lacks inclusionary language of the sort broadening the scope of paragraph 354.

Plaintiff also relies on *Gamble Vargish & Co., etc. v. United States*, 57 Cust. Ct. 448, C.D. 2834 (1966), where the court found that the addition of a pinion gear or worm gear did not make the motor into which it was integrated "more than" a motor for tariff purposes. The basis of the holding was that the pinion gear or worm gear was integrated physically in the motor, did not cause any change in the use of the motor, and was simply a part of the motor itself. On the other hand, in the present case the bubble-blowing mechanism is not a part of the musical feature of the instrument but rather performs a separate and independent function.

Also misplaced is plaintiff's reliance on *J. E. Bernard & Co. v. United States*, 40 Cust. Ct. 563, Abstract 61971 (1958). In that case the court held that a cigarette lighter casing containing a music box mechanism was classifiable as parts of cigarette lighters under paragraph 1527(c)(2) of the Tariff Act of 1930 rather than as music boxes and parts thereof under paragraph 154(a) of that act. The court stated (40 Cust. Ct. at 565):

> It is, in fact, a cigarette lighter, designed for and exclusively used as such. The music-box mechanism gives the article a novelty feature, but the finished product, at all times, retains its identity as a cigarette lighter of which the merchandise in question is an integral or component part, as classified by the collector.

In the present case, however, the article is not merely a toy musical instrument designed for and exclusively used as such. Nor does the imported article retain its identity as a toy musical instrument of

which the bubble-blowing mechanism is a part. Rather (as discussed previously) the imported article incorporates into one integral unit the separate function of two separate toys, and thus constitutes a new commercial article with an unique and distinctive character of its own.

The protest is overruled. Judgment is entered accordingly.