(C.D. 4258)

HOYT, SHEPSTON & SCIARONI
PAUL MASSON VINEYARDS } v. UNITED STATES

United States Customs Court, Third Division

(Decided August 20, 1971)

*Glad & Tuttle (Hudson F. Edwards* of counsel) for the plaintiffs.
*L. Patrick Gray, III,* Assistant Attorney General (*John A. Winters* and *Steven P. Florsheim,* trial attorneys), for the defendant.

Before Richardson and Landis, Judges, and Rosenstein, Senior Judge;
Richardson, J., dissenting

ROSENSTEIN, Judge: This case involves the classification of an article consisting of a metal handle, or housing, approximately 4½ inches long, enclosing three folding components: a pointed knife blade, corkscrew and lever for removing bottle caps and corks. The merchandise was assessed with duty at 25 per centum ad valorem and 12½ cents each under TSUS item 649.79, as knives valued over $3 but not over $6 per dozen, under the superior heading for pen, pocket and other knives having folding or other than fixed blades or attachments. Plaintiffs claim that the merchandise is properly dutiable at

17 per centum ad valorem under TSUS item 651.47, as other hand tools, not specially provided for, of steel.

The competing provisions read as follows:

Schedule 6, Part 3, Subpart E.

[Classified] Pen knives, pocket knives, and other knives, all the foregoing which have folding or other than fixed blades or attachments; and blades, handles, and other parts thereof:
Knives:
\* \* \* \* \* \* \*

649.79 Valued over $3 but not over $6 per dozen_____ 12.5¢ each +25% ad val.

[Claimed] Hand tools (including table, kitchen, and household implements of the character of hand tools) not specially provided for, and metal parts thereof:
\* \* \* \* \* \* \*
Other hand tools and parts thereof:
\* \* \* \* \* \* \*
Other:
Of iron or steel:
\* \* \* \* \* \* \*

651.47 Other _____ 17% ad val.

The sole witness, national merchandising manager for Paul Masson Vineyards, testified that the article, as represented by exhibit 1, is a promotional item used by his firm; that, on the basis of his observations, the importation is used "primarily" to open wine bottles; that the knife blade is used to take the foil off the top of the bottle; and that the lever is used in conjunction with the corkscrew to remove the cork. He agreed that the blade is sharp and he "would imagine" that it could cut paper or sharpen a pencil.

It was stipulated that the article which, according to a Customs Laboratory Report (exhibit 2), is "composed of iron or steel plated with chromium", was in chief weight of iron or steel (R.20).

Plaintiffs do not deny that the importation has a folding knife blade, but, claiming that the record establishes the "predominant" use of the article as a corkscrew, contend that the language of the Tariff Schedules provision for knives with folding blades has been narrowed in scope from that of its predecessor, paragraph 354, Tariff Act of 1930, so as to exclude therefrom an article which is not "predominantly" used as a knife.

We disagree. Even if the article were "predominantly" used as claimed, this would not suffice to remove it from the purview of item 649.79. The provision for "knives \* \* \* which have folding or other

than fixed blades or attachments" is an *eo nomine*, not a use, provision. See *J. M. Altieri* v. *United States*, 62 Cust. Ct. 91, C.D. 3687, 295 F. Supp. 269 (1969).

The effective change in this provision, in the carryover from the 1930 Tariff Act to the Tariff Schedules, was considered in *Romicks International, Inc.* v. *United States*, 64 Cust. Ct. 316, C.D. 3997 (1970), which involved the classification of an article consisting of a metal housing with a tamper on one end, enclosing a folding blade and a folding pick, and referred to variously as a pipe tool, pipe cleaner, and smoker's knife. The court stated:

> Items 649.71 through 649.85 are subdivisions under the superior heading for "Pen knives, pocket knives, and other knives, all the foregoing which have folding or other than fixed blades or attachments; and blades, handles, and other parts thereof". This heading differs from its predecessor, paragraph 354 of the Tariff Act of 1930, which provided in part:
>
> > Penknives, pocketknives, clasp knives, pruning knives, budding knives, erasers, manicure knives, and all knives by whatever name known, including such as are denominatively mentioned in this Act, which have folding or other than fixed blades or attachments, * * *.
>
> That paragraph was evidently intended to be invasive and has been construed to be a comprehensive one, including all knives which have folding blades. *J. M. Altieri* v. *United States*, 62 Cust. Ct. 91, C.D. 3687, 295 F. Supp. 269 (1969). See *Voss Cutlery Co.* v. *United States*, 41 CCPA 42, C.A.D. 526 (1953) (combination desk knife and letter opener) ; *Silberstein* v. *United States*, 3 Ct. Cust. Appls. 239, T.D. 32562 (1912) (combination penknife and letter opener) ; *E. M. Stevens Corp.* v. *United States*, 58 Cust. Ct. 512, C.D. 3033, 270 F. Supp. 25 (1967) (combination money clip, with folding knife blade and nail file) ; *Astra Trading Corp.* v. *United States*, 51 Cust. Ct. 132, C.D. 2420 (1963) (combination camping knife with folding blade, spoon, fork, bottle opener and other attachments) ; *Crystal Craft, Inc.* v. *United States*, 37 Cust. Ct. 368, Abstract 60247 (1956) (miniature penknife).
>
> The superior heading in the revised tariff schedules is not as all-embracing as its predecessor: budding, grafting, pruning, and cuticle or corn knives, among others, are separately provided for and are no longer under the general provision for knives with folding blades. *J. M. Altieri* v. *United States*, *supra*. However, unless more specifically provided for elsewhere, knives with folding blades come under the aforesaid superior heading.[2]

Although the question of predominant or chief use was not raised in *Romicks*, we are unable, upon review of the legislative history of this provision, to discern evidence of Congressional intent to introduce

---

[2] In this context, plaintiff does not contend that the claimed item 651.47 is more specific than item 649.79.

therein the element of chief use. See *Tariff Classification Study*, November 15, 1960, Schedule 6, Part 3.

We note that, in *E. M. Stevens Corp.* v. *United States*, 58 Cust. Ct. 512, C.D. 3033, 270 F. Supp. 25 (1967), plaintiff protested the classification of a combination money clip, folding knife blade and folding nail file under paragraph 354, claiming that the article was primarily a money clip. The court nonetheless affirmed the classification, observing that the importation "is still a knife despite the money clip and nail file attachments, classifiable under the knife provision, paragraph 354, *supra.*"

Similarly, the article at bar has a folding blade with a cutting edge, which brings it, attachments and all, within the purview of item 649.79.[1] Finding that the merchandise was correctly classified, we need not consider whether plaintiffs have established its claimed "predominant" use as other than a knife, or whether the elements of the claimed classification have been established.

The protest is overruled and judgment will be entered accordingly.[2]

DISSENTING OPINION

RICHARDSON, Judge: I would not overrule the protest, but would dismiss it for prematurity.

The official papers indicate the entry was liquidated within 60 days after appraisement, in fact appraisement and liquidation occurred the same day, March 8, 1968, but since no appeal for reappraisement has been filed and the time therefor has expired, the majority considers the liquidation valid under the case of *John V. Carr & Son, Inc.* v. *United States*, 66 Cust. Ct. 316, C.D. 4209 (1971).

This is a 1968 protest, and, according to Title I, Section 122 of The Customs Courts Act of 1970, it is governed by the law in effect prior to October 1, 1970. The liquidation in this protest is premature and void. The law in effect prior to October 1, 1970 as declared by the Court of Customs and Patent Appeals, and by this court in an unbroken chain of decisions, is that a liquidation of an entry prior to the expiration of the 60 days after appraisement in which the collector or district director might appeal for reappraisement is not upon a "final appraised value," is premature and void, and a protest against such liquidation must be dismissed as premature. *United States* v. *Boston Paper Board Co.*, 23 CCPA 372, T.D. 48233 (1936). See also: *Lawrence Groom & Co.* v. *United States*, 64 Treas. Dec. 119,

---

[1] Plaintiffs do not dispute that, as indicated on the invoices, the articles are valued over $3 but not over $6 per dozen.

[2] It appears from the official papers that the appraisement and liquidation herein were effected on the same day, March 8, 1968. As no appeal for reappraisement has been filed and the time therefor has expired, the liquidation remains valid. *John V. Carr & Son, Inc.* v. *United States*, 66 Cust. Ct. 316, C.D. 4209 (1971).

T.D. 46559 (1933), *Biddle Purchasing Co., et al.* v. *United States*, 69 Treas. Dec. 880, T.D. 48320 (1936), *Ti Hang Lung & Co.* v. *United States*, 3 Cust. Ct. 268, C.D. 248 (1939), and *The New Home Sewing Machine Co.* v. *United States*, 62 Cust. Ct. 895, R.D. 11655 (1969). There can be no "final appraised value" until either the right of appeal has been exhausted, or the statute of limitations has run against such appeal. Only then can there be a legal liquidation.

The Second Division in the case of *John V. Carr & Son, Inc.* v. *United States*, C.D. 4209 (April 29, 1971), takes the position that the Court of Customs and Patent Appeals (and this court prior to April 29, 1971), in using the word "void" to characterize a liquidation made prior to the expiration of the 60 days allowed for an appeal for reappraisement didn't really mean "void' 'but meant "voidable"; that it is legally wrong for the district director to liquidate prior to the expiration of 60 days within which he may appeal, but his illegal act is merely "voidable," and the blemish of illegality in not waiting for a "final appraisement" before liquidating is automatically wiped off by the expiration of the 60 days without the district director filing an appeal for reappraisement.

The opinion in the *Carr* case, *supra*, relies upon 19 U.S.C.A. § 1501 (a) (section 501(a) of the Tariff Act of 1930) in attempting to establish a "final appraised value." That statute provides in the part relied upon as follows:

> "(a) . . . The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written *appeal for a reappraisement* is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and accompanying papers by the collector to the United States Customs Court."

19 U.S.C.A. § 1501 would be pertinent here, if plaintiffs were parties seeking an appeal for a reappraisement—an action against an appraising officer for his determination of an "appraised value." This is not such an action. This is a protest proceeding—an action against a collecting officer for his liquidation on a basis other than a "final appraised value," involved in 19 U.S.C.A, § 1503,—one of the three essential elements the collecting officer is required to use in liquidating an entry, whether or not there has been an appeal for a reappraisement. The other two elements are quantity and rate. He cannot liquidate until the appraisement has become a "final appraised value,"

and he has determined the other two elements (quantity and rate) entering into his liquidation.

The opinion in the *Carr* case, *supra*, does not cite any cases holding that a collector or district director may make a premature liquidation in contravention of the statute, 19 U.S.C.A., § 1503 (section 503 of the Tariff Act of 1930, as amended), which provides:

> "(a) Except as provided in section 1562 of this title (relating to withdrawal from manipulating warehouses), the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the *final appraised value.*" (Emphasis added.)

It has been judicially determined that an appraised value becomes final upon the expiration of a 60-day period absent the filing of an appeal for reappraisement, and that the collecting officer cannot liquidate until the appraisement has become a "final appraised value."

The premature liquidation was not an act which the collector or district director had the power to perform, but performed in an improper manner as the Court of Customs and Patent Appeals held the facts to be in the case of *Joseph Fischer* v. *United States*, 38 CCPA 143, 150, C.A.D. 452 (1951), cited in the *Carr* case. The collector or district director had no power to liquidate until there was a "final appraisement," that is, after the 60 days for appeal had expired. Even that case made a distinction between what is merely "erroneous" and thus "voidable" and what is "illegal" and thus "void."

Whereas the opinion in the *Carr* case, *supra*, does not expressly state that the district director may waive the 60-day period within which he may appeal, the opinion implies as much.

The argument that the collector or district director be regarded as having waived his right to appeal by a premature liquidation was exploded in *Lawrence Groom & Co.* v. *United States*, 64 Treas. Dec. 119, T.D. 46559 (1933), where the collector liquidated an entry eleven days after the appraiser's report and thereafter filed an appeal for reappraisement on the fifty-ninth day. The court in permitting him to appeal for reappraisement did not regard the premature liquidation as a waiver of his right to appeal. The court at page 121 said:

> ". . . The collector in this case had no appraised value upon which he could *legally* assess duty until after the 60-day period after the appraiser's return, within which he was authorized to file an appeal for a reappraisement, had expired." (Emphasis added.)
>
> \* \* \* \* \* \* \*
>
> "It is not within the power of the collector to destroy the authority granted him by Congress of filing an appeal for a reappraisement by liquidating an entry during the time within which he is authorized to file an appeal for a reappraisement of the

merchandise. *The collector cannot destroy a legal right by the doing of an illegal act.*" (Emphasis added.)

A waiver means to irrevocably relinquish a right that is beneficial to the individual. A person cannot make a waiver of a right and then later say "I have changed my mind. I take the waiver back." The 60-day period within which the collector or district director may appeal is not a personal right or privilege to waive, but a right given the collector or district director on behalf of the United States Government to determine within a 60-day period whether in the public interest an appeal for reappraisement should be taken. He cannot shorten this 60-day period by a premature liquidation.

The *Lawrence Groom & Co.* case, *supra*, was decided on the basis of section 503 of the Tariff Act of 1922 which did not contain the expression "final appraised value." The court did use substantially similar language in its decision when it said: "In this case the appraised value of the merchandise did not become *final* and conclusive upon all parties so long as the right of appeal was vested in either of them." (Emphasis added.)

The expression "final appraised value" appeared for the first time in section 503 of the Tariff Act of 1930. Section 503 was amended in 1953, but Congress retained the expression "final appraised value," with a knowledge of the court's interpretation of the expression. If Congress had disapproved of the long standing judicial interpretation of what is meant by "final appraised value," it is submitted that it would have further amended the statute to indicate its disapproval. Its failure to do so evinces an intent to consider premature liquidations null, void and of no effect.

In the *Biddle Purchasing Co., et al.* case, *supra*, the majority of the court also rejected the contention that a liquidation prior to the expiration of the 60-day period constitutes a waiver of the 60-day waiting period for the appraisement to become final.

The Second Division, in its opinion in the *Carr* case, *supra*, states that in the Biddle case, *supra*, ". . . where no appeal was filed, the appraisement was not held void." The issue in the *Biddle* case, *supra*, was not whether the appraisement was void, but whether the liquidation was void. The court had the following to say on this issue, at pages 885 and 886 of its opinion:

"It was only after sixty days from the date of the appraiser's report that the appraised value became final. Any liquidation made prior to the time when the appraisement becomes final is *void and without any force or effect. Such has been the holding of this court and the appellate court.*" (Emphasis added.)

". . . on March 23, 1936, in *United States* v. *Boston Paper Board Co.*, 23 CCPA 372, T.D. 48233, [the Court of Customs and Patent

Appeals did] hold that the attempted liquidation of the entry prior to the expiration of the time within which to appeal for reappraisement was properly held by the trial court and the division to be *null and void*.

"On the facts in the case at bar we so hold." (Emphasis added.) At page 885.

\* \* \* \* \* \* \*

". . . The date on which final appraisement became valid was provided for under existing law. Therefore the liquidation in question, having been made prior to the time allowed by law, viz, sixty days, when the appraisement became final, and during which period the collector had the right to appeal, was invalid.

*"We therefore hold the liquidation of the entries covered by these protests null and void, and of no force and effect.* The protests are sustained." (Emphasis added.) At pages 885–886.

The headnote in the *Biddle* case, *supra*, at page 880 also states:

"A liquidation made prior to the expiration of the sixty days allowed by law to the collector within which to appeal for reappraisement is *void*, as the appraisement by the appraiser does not become final and conclusive until such time has expired." (Emphasis added.)

Admittedly a headnote is no part of the decision in a case, but in this instance it does succinctly and accurately capsule the opinion.

The Customs Courts Act of 1970, effective October 1, 1970, changes the administrative procedure in appraisement and liquidation, but the same Act limits this court to applying the law in effect prior to October 1, 1970, in deciding protests, the trial of which began prior to October 1, 1970 (Title I, Section 122 of The Customs Courts Act of 1970). This protest was tried prior to October 1, 1970.

The liquidation herein is null and void by reason of its prematurity, and the protest filed herein against such a void liquidation is premature, and must, therefore, be dismissed.